UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| RANCHERS-CATTLEMEN ACTION LEGAL FUND UNITED STOCKGROWERS OF AMERICA; SOUTH DAKOTA STOCKGROWERS ASSOCIATION; FARM AND RANCH FREEDOM ALLIANCE, KENNY FOX; ROXIE FOX; RICK FOX; THERESA FOX,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF AGRICULTURE; ANIMAL AND PLANT HEALTH INSPECTION SERVICE; MICHAEL WATSON, in his official capacity as Administrator of the Animal and Plant Health Inspection Service; BROOKE L. ROLLINS, in her official capacity as Secretary of Agriculture,<br><br>Defendants. | 5:24-CV-05085-ECS<br><br>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS, DOC. 23, AND DENYING AS MOOT DEFENDANTS' MOTION TO DISMISS, DOC. 18 |

This matter comes before the Court on the United States Department of Agriculture ("USDA"); Animal and Plant Health Inspection Service ("APHIS"); Michael Watson, in his official capacity as Administrator of APHIS; and Brooke L. Rollins, in her official capacity as Secretary of Agriculture, (collectively "Defendants"') Motion to Dismiss Plaintiffs' First Amended Complaint. Doc. 23. Ranchers-Cattlemen Action Legal Fund United Stockgrowers of America ("R-CALF USA"), South Dakota Stockgrowers Association ("SDSGA"), Farm and Ranch Freedom Alliance ("FARFA"), Kenny Fox, Roxie Fox, Rick Fox, and Theresa Fox (collectively "Plaintiffs'") Amended Complaint seeks declaratory and injunctive relief to halt Defendants' final rule mandating that "all official eartags sold for or applied to cattle and bison

must be readable both visually and electronically." Doc. 20 at 1–2 (quoting Use of Electronic Identification Eartags as Official Identification in Cattle and Bison, 89 Fed. Reg. 39540, 39550 (May 9, 2024) (codified at 9 C.F.R. § 86.4(a)(1)(i)). Plaintiffs maintain that the Final Rule now requires them to use more expensive Electronic Identification ("EID") eartags, as opposed to their ordinary metal eartags, which were allowed prior to the Final Rule. Id. ¶¶ 6, 181; see also 89 Fed. Reg. 39560. Disagreeing with the Final Rule, Plaintiffs allege that it violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Doc. 20 at 35–38. Plaintiffs' first count asserts the Final Rule is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Id. ¶ 200 (quoting 5 U.S.C. § 706(2)(C)). Plaintiffs second count asserts the Final Rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Id. ¶¶ 203–219 (quoting 5 U.S.C. § 706(2)(A)).

Defendants move to dismiss Plaintiffs' Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) or to partially dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6). Doc. 23. Defendants contend this Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs lack Article III standing. Doc. 24 at 10. Alternatively, Defendants move to dismiss Count One and partially dismiss Count Two for failure to state a claim. Id. Plaintiffs oppose Defendants' motion. Doc. 25.

For the reasons stated below, this Court finds that Plaintiffs have established standing to contest the Final Rule. But because Plaintiffs do not allege a proper "in excess of statutory jurisdiction" claim under the APA in Count One, this Court dismisses that count. As for Count Two, the Court denies Defendants' motion because Plaintiffs have pled a proper APA "arbitrary and capricious" claim under 5 U.S.C. § 706(2)(A).

I. **Background**[1]

A. **Regulatory History**

Because this is an APA case, the Court provides a brief overview of the relevant statutory and regulatory structure.

The Animal Health Protection Act ("AHPA") aims to prevent, detect, control, and eradicate animal diseases and pests. Pub. L. No. 107-171, 116 Stat. 494 §§ 10401–10402 (2002) (codified at 7 U.S.C. § 8301(1)) (finding such aims essential to protect: "(A) animal health; (B) the health and welfare of the people of the United States; (C) the economic interests of the livestock and related industries of the United States; (D) the environment of the United States; and (E) interstate commerce and foreign commerce of the United States in animals and other articles"). Under the AHPA, the Secretary of Agriculture "may prohibit or restrict the movement in interstate commerce of any animal, article, or means of conveyance if the Secretary determines that the prohibition or restriction is necessary to prevent the introduction or dissemination of any pest or disease of livestock." 7 U.S.C. § 8305(1). The Secretary may also "promulgate such regulations, and issue such orders, as the Secretary determines necessary to carry out this chapter." § 8315. Violations of the AHPA and regulations promulgated by the Secretary are enforced through the AHPA's penalty provisions, which provide for both criminal and civil penalties. See § 8313 (laying out civil and criminal penalties for violations of "this chapter"); § 8302(16) (defining "this chapter" as including "any regulation or order issued by the Secretary under the authority of this chapter"). The Secretary delegated his authority under the AHPA to APHIS. See 7 C.F.R. §§ 2.22(a)(2)(xxxii), 2.80(a)(37).

---

[1] This Court accepts Plaintiffs' factual allegations as true and views them in the light most favorable to Plaintiffs, as the non-moving party. Glick v. W. Power Sports, Inc., 944 F.3d 714, 717 (8th Cir. 2019) (citation omitted).

3

On January 9, 2013, pursuant to its authority under § 8305, APHIS promulgated a final rule creating an Animal Disease Traceability ("ADT") program. Traceability for Livestock Moving Interstate, 78 Fed. Reg. 2040–2042 (Jan. 9, 2013) (codified at 9 C.F.R. Part 86). ADT helps determine "where diseased and at-risk animals are, where they have been, and when they were there."[2] "[A]nimal disease traceability does not prevent disease" but aims to "reduce[] the number of animals and response time involved in a disease investigation."[3] "Key principles of the [ADT] framework include[d]: (1) The requirement for official identification of livestock when moved interstate; (2) Administration by the States and Tribal Nations to increase flexibility; (3) Encouraging the use of low-cost technology; [and] (4) Transparent implementation through the full Federal rulemaking process."[4] The 2013 ADT rule listed approved "Official identification devices and methods" and required cattle and bison[5] transported interstate to be identified by:

> (i) An official eartag; or
>
> (ii) Brands registered with a recognized brand inspection authority and accompanied by an official brand inspection certificate, when agreed to by the shipping and receiving State or Tribal animal health authorities; or
>
> (iii) Tattoos and other identification methods acceptable to a breed association for registration purposes, accompanied by a breed registration certificate, when agreed to by the shipping and receiving State or/Tribal animal health authorities; or
>
> (iv) Group/lot identification when a group/lot identification number (GIN) may be used.

---

[2] USDA APHIS, Animal Disease Traceability, https://www.aphis.usda.gov/livestock-poultry-disease/traceability (last modified Sept. 12, 2025).
[3] Id.
[4] USDA APHIS, Animal Disease Traceability Assessment Report April 2017, at 6–7, https://www.aphis.usda.gov/sites/default/files/adt-assessment.pdf (numeration added).
[5] The final rule did not apply to feeder cattle (cattle under 18 months of age). 78 Fed. Reg. 2041.

4

78 Fed. Reg. 2073 (codified at 9 C.F.R. § 86.4(a)(1) (2013)). The 2013 ADT rule did not prohibit the use of radio frequency identification ("RFID") eartags, which are a form of EID eartags. Id. at 2062. However, it did prohibit states and tribes "from mandating the use of RFID or electronic records, or any other specific technology, for animals moving into their jurisdiction." Id.

In 2017, APHIS issued an Assessment Report evaluating the effectiveness of the ADT program and to "enhance [its] tracing capabilities for emergency response, disease control and eradication programs."[6] In this report, APHIS noted that "while ADT has been successful in the context of the intended framework, significant gaps still exist within [its] tracing capabilities."[7] One issue that APHIS emphasized was that:

> The ADT framework relies on the use of the basic, cost-effective identification methods used in APHIS' disease eradication programs and are widely accepted by producers. However, the challenges and limitations resulting from visual-only low cost identification eartags are evident. Yet the implementation of radio frequency identification (RFID) technology, while preferred by many, also has obstacles. The implementation of a RFID solution for traceability, if undertaken, would be a significant challenge and would require a lengthy implementation period and a well thought out and detailed plan.[8]

Over the next two years, APHIS personnel held public meetings and met with stakeholders to discuss this issue. 89 Fed. Reg. 39541. In April 2019, APHIS issued a "Factsheet" mandating that "Beginning January 1, 2023, animals that move interstate and fall into specific categories will need official, individual RFID ear tags."[9] Six months later, Plaintiffs R-CALF USA and Kenny and Roxie Fox filed suit against the USDA. See R-CALF USA v.

---

[6] See USDA APHIS, supra note 4, at 4.
[7] Id.
[8] See id. at 5.
[9] See USDA, Factsheet, Advancing Animal Disease Traceability: A Plan to Achieve Electronic Identification in Cattle and Bison (Apr. 2019), archived at https://www.r-calfusa.com/wp-content/uploads/2020/02/plan-to-achieve-eid-factsheet.pdf.

5

USDA, No. 19-CV-205-NDF, 2020 WL 10356243, at *1 (D. Wyo. Feb. 13, 2020). The USDA and APHIS "withdrew the Factsheet" three weeks later, mooting the case. Id.

In July 2020, APHIS published a notice and request for comments in the Federal Register announcing the agency's proposal to, as of January 1, 2023, only allow RFID EID eartags. Use of Radio Frequency Identification Tags as Official Identification in Cattle and Bison, 85 Fed. Reg. 40184–85 (July 6, 2020). In response to this notice, APHIS "received 935 comments . . . from industry groups, producers, veterinarians, State departments of agriculture, and individuals." 89 Fed. Reg. 39541. After reviewing the comments, APHIS "determined that withdrawing our recognition of visual-only (non-EID) eartags as official eartags for cattle and bison moving interstate would constitute a change in the application of [its] regulatory requirements of sufficient magnitude to merit rulemaking rather than the notice-based process [it] originally envisioned." Id. at 39542. In March 2021, APHIS "issued a stakeholder announcement indicating that [it] would not finalize the 2020 notice, and that [it] would use the rulemaking process for further action related to the proposal." Id. (internal citation and quotation omitted).

On January 19, 2023, APHIS published in the Federal Register a proposed rule to amend the ADT regulations' requirements for official eartags. Use of Electronic Identification Eartags as Official Identification in Cattle and Bison, 88 Fed. Reg. 3320, 3323 (Jan. 19, 2023). It proposed that, beginning 180 days after the Final Rule publication date, "all official eartags sold for or applied to cattle and bison" pursuant to 9 C.F.R. § 86.4(a)(1)(i) "must be readable both visually and electronically." Id. at 3325. Visual-only metal eartags "applied to cattle and bison before [the implementation date] would continue to be recognized as official identification for the life of the animals." Id. at 3323. The proposed rule's comment period was 90 days—ending

on April 19, 2023. 89 Fed. Reg. 39542. APHIS received 2,006 comments, id., including comments from Plaintiffs asserting that the proposed rule was unnecessary. Doc. 20 ¶¶ 140–141.

On May 9, 2024, APHIS and USDA adopted the Final Rule requiring that "all official eartags sold for or applied to cattle and bison must be readable both visually and electronically." 89 Fed. Reg. 39540, 39550. The Final Rule stated that it would become effective on November 5, 2024. Id. at 39540.

### B.     Facts[10]

On October 30, 2024, Plaintiffs filed this action against Defendants. Doc. 1.

Plaintiff R-CALF USA is the country's largest producer-only membership-based organization that exclusively represents U.S. cattle and sheep producers on domestic and international trade and marketing issues. Doc. 20 ¶ 14. R-CALF USA is dedicated to ensuring the continued profitability and viability of the U.S. cattle industry. Id. R-CALF USA's membership of approximately 4,000 voluntary dues-paying members consists primarily of cow-calf producers, cattle backgrounders, and feeders. Id.

Plaintiff South Dakota Stockgrowers Association is a South Dakota nonprofit corporation. Id. ¶ 30. SDSGA is the oldest livestock producer organization nationally and continues to represent producer views through membership participation. Id. ¶ 31.

Plaintiff Farm and Ranch Freedom Alliance is a Texas nonprofit. Id. ¶ 54. FARFA is a national organization that supports independent family farmers and protects a healthy and productive food supply for American consumers. Id. ¶ 55. FARFA was founded specifically to oppose the plans for a National Animal Identification System. Id. ¶ 54.

---

[10] For readability, quotation marks are omitted when quoting facts from Plaintiffs' First Amended Complaint (Doc. 20).

Plaintiffs Kenny and Roxie Fox are third-generation ranchers operating a cow-calf operation near Belvidere, South Dakota. Id. ¶ 69. Kenny and Roxie sell calves, cows, and slaughter bulls at least twice a year across the state line in Valentine, Nebraska, and their calves have also been purchased by out-of-state buyers in the past. Id. ¶¶ 71–72. Pursuant to and in reliance upon prior USDA regulations, they have relied on brands, metal eartags, and tattoos to comply with the identification and traceability requirements for the interstate movement of their cattle. Id. ¶ 70. Kenny and Roxie allege that Nebraska and South Dakota do not have a shipping and receiving agreement which would permit the Foxes to rely on non-EID eartags as official identification when shipping their cattle across state lines. Id. ¶ 74. For this reason, they maintain that the Final Rule now requires them to purchase and place EID eartags on their cattle to continue operating as they have for years. Id. ¶ 76. They are members of R-CALF USA, SDSGA, and FARFA. Id. ¶ 77.

Rick and Theresa Fox operate a cow-calf ranch in Hermosa, South Dakota. Id. ¶ 78. Rick and Theresa sell calves, yearlings, cows, and bulls predominately at the Fort Pierre Livestock Auction, but they also sell bred cows to out-of-state buyers. Id. Pursuant to and in reliance upon prior USDA regulations, Rick and Theresa have relied exclusively on branding, as well as metal eartags and tattoos, to comply with the identification and traceability requirements for the interstate movement of their cattle. Id. ¶ 79. Rick and Theresa are members of R-CALF USA and SDSGA. Id. ¶ 84. All individual plaintiffs (Kenny, Roxie, Rick, and Theresa) allege that they face increasing costs to their ranching operation due to the EID Final Rule and its EID eartag requirement. Id. ¶ 86.

## II.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Defendants first contend that this Court lacks subject matter jurisdiction over the claims in Plaintiffs' First Amended Complaint because all Plaintiffs[11] lack Article III standing. Doc. 24 at 23–32.

### A.  Rule 12(b)(1) Standard

Federal Rule of Civil Procedure 12(b)(1) permits a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." "Subject matter jurisdiction . . . is a threshold requirement which must be assured in every federal case." Turner v. Armontrout, 922 F.2d 492, 493 (8th Cir. 1991) (citation omitted). "The plaintiff bears the burden to establish subject-matter jurisdiction." Two Eagle v. United States, 57 F.4th 616, 620 (8th Cir. 2023). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction. Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citation omitted). In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (citations omitted). A factual attack disregards the pleadings and challenges the existence of subject matter jurisdiction in fact. Branson Label, Inc. v. City of Branson, 793 F.3d 910, 914–15 (8th Cir. 2015) (citing Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)).

---

[11] Tracy Hunt, d/b/a The MW Cattle Company, LLC, and Donna Hunt, d/b/a The MW Cattle Company, LLC, both named Plaintiffs in the original Complaint, are not named Plaintiffs in the First Amended Complaint. Compare Doc. 1 at 1 with Doc. 20 at 1. "[A]n amended complaint super[s]edes an original complaint and renders the original complaint without legal effect." In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000). And so, an amended complaint that omits a named party operates as a dismissal of that party. Cf. Bonga v. Beltz, Case No. 20-cv-1200 (WMW/LIB), 2022 WL 2438179, at *3 (D. Minn. July 5, 2022) (citing Barnes v. United States, 111 F. App'x 441, 443 (8th Cir. 2004) (per curiam)). This Court presumes intentional the omission of the Hunt Plaintiffs and recognizes their dismissal with no further action necessary. The Hunt Plaintiffs are omitted from the caption herein and will be terminated on the docket. Any party that objects to the dismissal of the Hunt Plaintiffs must lodge the objection with this Court within twenty-one days of this Order.

9

"[M]atters outside the pleadings, such as testimony and affidavits, are considered," and so the non-moving party loses the protections of Rule 12(b)(6). Id. (quoting Menchaca, 613 F.2d at 511); Osborn, 918 F.2d at 729 n.6.

Defendants' motion appears to mount a facial, rather than factual, attack on Plaintiffs' Amended Complaint. Defendants neither dispute Plaintiffs' factual averments nor point to evidence challenging them. Thus, this Court will restrict "itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Jones v. United States, 727 F.3d 844, 846 (8th Cir. 2013) (quoting Osborn, 918 F.2d at 729 n. 6).

### B. Standing

Under Article III of the Constitution, federal courts may only resolve cases or controversies. See Zanders v. Swanson, 573 F.3d 591, 593 (8th Cir. 2009) (citation omitted). To satisfy the case or controversy requirement, a plaintiff must have standing, or put differently, be a "proper party to bring [a particular lawsuit]." Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n, 576 U.S. 787, 799 (2015) (alteration in original) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)). Standing "is a threshold question that determines whether a federal court has jurisdiction over a plaintiff's claims." Kuhns v. Scottrade, Inc., 868 F.3d 711, 716 (8th Cir. 2017). The standing requirement prevents courts from exceeding their limited role in our democracy, such as by making policy, or serving as a forum to air general grievances. Warth v. Seldin, 422 U.S. 490, 498 (1975); see United States v. Hays, 515 U.S. 737, 743 (1995). It limits the courts to resolving disputes where the plaintiff possesses a personal stake in the outcome. Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 71 (2013).

Standing has three essential elements. A plaintiff must have: (1) suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the defendant; and (3) that is likely to be redressed by a favorable judicial decision. Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992). An injury in fact must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Id. at 560 (internal quotation marks omitted). In other words, "[u]nder Article III, federal courts do not adjudicate hypothetical or abstract disputes." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021). An injury is fairly traceable to the challenged conduct of the defendant "if the plaintiff shows 'a causal connection between the injury and the conduct complained of' that is 'not the result of the independent action of some third party not before the court.'" In re SuperValu, Inc., 870 F.3d 763, 768 (8th Cir. 2017) (quoting Lujan, 504 U.S. at 560 (citation modified)). "For an injury to be redressable, judicial action must be likely to remedy the harm and cannot be merely speculative." Steger v. Franco, Inc., 228 F.3d 889, 893 (8th Cir. 2000).

The plaintiff has the burden of establishing standing. Agred Found. v. U.S. Army Corps of Eng'rs, 3 F.4th 1069, 1073 (8th Cir. 2021) (citation omitted). "To survive a motion to dismiss, a plaintiff need only allege sufficient factual matter, accepted as true, to support a reasonable and plausible inference that she satisfies the elements of Article III standing." Johnson v. Griffin, 69 F.4th 506, 510 (8th Cir. 2023) (quotation omitted). "[T]his pleading burden is 'relatively modest.'" Id. (quoting Bennett v. Spear, 520 U.S. 154, 171 (1997)).

1. **Individual Plaintiffs**

Defendants largely make three arguments as to why the individual Plaintiffs (Kenny, Roxie, Rick, and Theresa Fox) lack standing. The Court will address each argument in turn.

First, Defendants contend that the individual Plaintiffs cannot establish an injury because they alleged that they use, and may continue to use, in addition to the previously allowed metal eartags, other forms of official identification methods under 9 C.F.R. § 86.4(a)(1), including brands and tattoos, showing that they cannot establish an injury in fact. Doc. 24 at 27. Plaintiffs, in response, assert that they cannot rely on brands and tattoos because those are only allowed under the Final Rule "if they are 'agreed to by the shipping and receiving State or Tribal animal health authorities.'" Doc. 25 at 15–16 (quoting 9 C.F.R. § 86.4(a)(1)(ii), (iii)). Plaintiffs allege in their Amended Complaint that there is no such agreement between South Dakota and Nebraska, Doc. 20 ¶¶ 73–74, and renew the allegation in their responsive brief. Doc. 25 at 16. Defendants did not address or contradict this assertion in any of their briefing. Thus, contrary to Defendants' argument, Plaintiffs plausibly allege that their only official identification option under the Final Rule is a visually readable EID tag. See 9 C.F.R. § 86.4(a)(1).

Second, Defendants maintain that APHIS has and will continue to provide funding for visually readable EID eartags. To this end, they assert that Plaintiffs have not established "that they stand to incur actual and imminent financial costs in order to comply with the Rule." Doc. 28 at 5. Plaintiffs, however, throughout their Amended Complaint allege that certain individuals have paid money for EID tags and that the financial burden on most cattle herds will be anywhere from $50 to $2,000. Doc. 20 ¶¶ 23–28, 34–38, 39–43, 44–47, 48–51, 188. Additionally, the Final Rule states that "APHIS cannot commit to long-term funding for EID tags because the availability of Federal funding in future fiscal years is dependent on annual Congressional appropriations and USDA–APHIS budgetary priorities." 89 Fed. Reg. 39556. Therefore, Defendants' funding argument is unpersuasive.

Defendants' third argument relates to the individual Plaintiffs' claim that because of the Final Rule, cattle vaccinated for brucellosis are now required to wear EID eartags. Doc. 20 ¶ 81, cf. id. ¶ 75–76. Defendants counter that "[n]o Plaintiff or identified member of a Plaintiff organization has claimed that they move livestock into and out of the Greater Yellowstone Area such that bangs[12] vaccination is required." Doc. 28 at 3 (citing 9 C.F.R. § 78.10). Defendants refer to the APHIS brucellosis vaccination requirement "for cattle in the Greater Yellowstone Area." 89 Fed. Reg. 39560. The argument is confusing considering in support of the Final Rule, Defendants found that "[t]raceability is necessary for controlling both fast-moving diseases, like FMD, as well as slower-moving diseases, like TB and *brucellosis*." 89 Fed. Reg. 39543 (emphasis added). Plaintiffs vaccinate their cattle against Brucellosis "[a]s part of their regular herd management practices and in an abundance of caution due to the location of their operation," or "to be able to sell their cattle to certain buyers." Doc. 20 ¶¶ 75, 80. Rick and Theresa Fox "sell bangs vaccinated replacement quality yearling heifers each June. Without the bangs tag those cattle would be sold as feeder heifers, which are normally sold at a lower price." Id. ¶ 83.

Defendants argue even if Plaintiffs choose to vaccinate, an EID is not required to demonstrate participation in the vaccination program. Doc. 28 at 3–4. So, Defendants argue, any alleged injury by voluntarily purchasing visually readable EID eartags as part of a voluntary vaccination process is self-inflicted. Id. at 4; see Doc. 20 ¶¶ 150–151. But even if an EID eartag is not required as part of the vaccination process,[13] Defendants acknowledge that if Plaintiffs chose, "*inter alia*, [an] orange and metal" eartag to demonstrate vaccination, Doc. 24 at 21, that

---

[12] Brucellosis.
[13] A matter disputed by Plaintiffs by citing to the APHIS "Official Eartags – Criteria and Options" summary. Doc. 25 at 18–19 (stating that metal eartags are only valid as official vaccination eartags "if applied prior to November 5, 2024" (citing 9 C.F.R. Part 86)).

eartag would not "double count" for purposes of ADT—thus requiring the separate purchase of an EID eartag to satisfy the requirements of 9 C.F.R. § 86.4 for animals shipped interstate. Id. (citing 89 Fed. Reg. 39554). Whether the higher cost of an EID is assumed at the time of vaccination or the cost of a second tag, an EID, is incurred upon interstate shipment, Plaintiffs plausibly state an injury.

Ultimately, the individual Plaintiffs' alleged facts, accepted as true, survive the "relatively modest" pleading burden for Article III standing. Johnson, 69 F.4th at 510. These Plaintiffs allege that the Final Rule requires them to now buy visually readable EID eartags, which are more expensive than the previous metal tags, to continue operating as they have for years. Doc. 20. Plaintiffs' injury is no doubt traceable to the Defendants' Final Rule that requires animals in interstate movement to wear visually readable EID tags for official identification, as opposed to the previous metal eartags. Lastly, Plaintiffs' injury can be redressed by this Court through their APA claim attacking the Final Rule. For this reason, Kenny, Roxie, Rick, and Theresa Fox have standing to contest the Final Rule.

### 2. Organizational Plaintiffs

An organization has standing to bring suit on behalf of its members when "(1) the individual members would have standing to sue in their own right; (2) the organization's purpose relates to the interests being vindicated; and (3) the claims asserted do not require the participation of individual members." Sierra Club v. U.S. Army Corps of Eng'rs, 645 F.3d 978, 986 (8th Cir. 2011) (citations omitted). Defendants argue that the organizational plaintiffs lack standing because no individual member has standing. Doc. 24 at 31–32. An organizational plaintiff "need not establish that all of its members would have standing to sue individually so long as it can show that 'any one of them' would have standing." Iowa League of Cities v. EPA,

14

711 F.3d 844, 869 (8th Cir. 2013) (quoting Warth, 422 U.S. at 511). Kenny and Roxie Fox are members of R-CALF USA, SDSGA, and FARFA. Doc. 20 ¶ 77. Because this Court held Kenny and Roxie Fox have individual standing, Defendants' argument fails, and this Court denies Defendants' 12(b)(1) motion.

### III.    Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) permits a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." Although a complaint need not contain detailed factual allegations to survive a motion to dismiss under Rule 12(b)(6), it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly, 550 U.S. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

On a motion to dismiss under Rule 12(b)(6), "[c]ourts must accept a plaintiff's factual allegations as true" and construe all reasonable inferences in the plaintiff's favor "but need not accept a plaintiff's legal conclusions." Retro Television Network, Inc. v. Luken Commc'ns, LLC, 696 F.3d 766, 768–69 (8th Cir. 2012) (citing Ashcroft, 556 U.S. at 678; E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 662 (8th Cir. 2012)). When ruling on a Rule 12(b)(6) motion, a court generally must ignore materials outside the pleadings, but it may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached

15

to the complaint whose authenticity is unquestioned." Dittmer Props., L.P. v. FDIC, 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

### A. Count One

Defendants move to dismiss Plaintiffs' "in excess of statutory jurisdiction" claim (Count One). Doc. 24 at 33–34.

Plaintiffs' First Amended Complaint asserts that the AHPA enforcement provision, 7 U.S.C. § 8313, "makes no provisions for criminal or civil penalties regarding violations of regulations promulgated pursuant to the [APHA]," Doc. 20 ¶¶ 194–201, because Section 8313 states only that persons who violate "this chapter" (Chapter 109) can be assessed civil or criminal penalties. The First Amended Complaint states that "[t]o the extent that Defendants intend to or will enforce the Final Rule pursuant to 7 U.S.C. § 8313, they would be acting in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Doc. 20 ¶ 199.

Defendants argue that "this chapter" includes the "regulation[s]"—like ADT regulations amended by the Final Rule—that the agency issues under the AHPA. Doc. 24 at 33 (quoting 7 U.S.C. § 8302(16)). And because Defendants can enforce criminal and civil penalties for violations of their regulations, "the Court should dismiss Count One under Rule 12(b)(6)." Id. at 34.

Plaintiffs respond contending that Defendants' argument presents "a clear separation of powers issue." Doc. 25 at 31. They argue that only Congress may "determine what is a crime," and that Congress "is not permitted to abdicate or . . . transfer" that power to others. Id. at 31–32 (quoting A.L.A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 529 (1935)). So,

whether "the Agency exceeded its statutory authority or acted under a statute that exceeded constitutional limitations, the EID Final Rule violates the APA." Id. at 32.

Defendants reply that Plaintiffs are improperly proceeding on a different claim than the one pled by introducing constitutional, as opposed to statutory, arguments. Doc. 28 at 6. Defendants assert that, even if Plaintiffs properly brought their constitutional argument, which is based on the nondelegation doctrine, the United States Supreme Court "has held, time and again, that a statutory delegation is constitutional as long as Congress lays down by legislative act an intelligible principle to which the person or body authorized to exercise the delegated authority is directed to conform." Id. at 7 (quoting Gundy v. United States, 588 U.S. 128, 135 (2019) (plurality opinion)).

The APA allows courts to set aside agency actions that are "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). Plaintiffs' separation of powers argument is a clear constitutional attack. See, e.g., Collins v. Yellen, 594 U.S. 220, 228 (2021) (treating a separation of powers argument as a constitutional claim). The law Count One arises under, however, is not 5 U.S.C. § 706(2)(B). It is § 706(2)(C), which allows courts to set aside agency actions "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Doc. 20 ¶¶ 195, 200. Each paragraph under § 706(2) represents a separate cause of action. Plaintiffs appear to recognize this, as they already bring separate causes of action under paragraphs (A) and (C). Doc. 20. If Plaintiffs wish to add a constitutional claim under paragraph (B), they may amend their complaint only with the consent of Defendants or leave of this Court. Fed. R. Civ. P. 15(a)(2). They may not "unilaterally" do so, "simply by raising a point in [their] brief." Morgan Distrib. Co. v. Unidynamic Corp., 868 F.2d 992, 995 (8th Cir. 1989) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a

motion to dismiss." (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir 1984)). The Court cannot entertain an argument not properly before it.

Turning to the claim that is properly before the Court, Plaintiffs fail to adequately respond to Defendants' statutory argument; they solely focus on their new separation of powers argument. See Demien Constr. Co. v. O'Fallon Fire Prot. Dist., 812 F.3d 654, 657 (8th Cir. 2016) (party's failure to respond to arguments raised in a motion to dismiss permits an inference of abandonment of claim). Plaintiffs likely do not respond directly to Defendants' arguments because the definition of "this chapter" includes "any regulation or order issued by the Secretary under the authority of this chapter." 7 U.S.C. § 8302(16). Because "this chapter" includes Defendants' regulations, Defendants can levy criminal and civil penalties for violations of the Final Rule. See 7 U.S.C. § 8313 (criminal and civil penalties may be imposed against persons who violate "this chapter" (Chapter 109)); accord Amazon Servs. LLC v. USDA, 109 F.4th 573, 575 (D.C. Cir. 2024) (holding that § 8313 allows "the Secretary to impose civil and criminal penalties on persons who violate the statutes or the Secretary's implementing regulations"). Count One of Plaintiffs' Amended Complaint fails to state a claim and must be dismissed.

### B.   Count Two

Defendants next seek to partially dismiss Count Two. Doc. 24 at 34. Defendants specifically seek to strike paragraphs 207 and 209 of Count Two. Id. at 35.

"The legal basis for [the EID Final Rule] is the AHPA, under 7 U.S.C. [§] 8305." 89 Fed. Reg. 39555. This statute allows Defendants to "prohibit or restrict the movement in interstate commerce of any animal, article, or means of conveyance if the Secretary determines that the prohibition or restriction is necessary to prevent the introduction or dissemination of any pest or disease of livestock." 7 U.S.C. § 8305(1).

Plaintiffs allege that the Final Rule's "eartag requirement is not necessary." Doc. 25 at 34. They also maintain that detailed factfinding is required under the necessity requirement of 7 U.S.C. § 8305 because Defendants changed their position on the effectiveness of visual-only eartags. Id. at 34–35. Defendants state they do not seek to dismiss such claims or arguments. Doc. 28 at 11 ("Whether the Secretary's determination that the EID Rule was necessary and sufficiently supported by the complete administrative record, as a factual matter, is a separate question suitable for resolution at summary judgment. Defendants do not presently move to dismiss such claims or arguments. Likewise, Defendants have not moved to dismiss Plaintiffs' argument that the EID Rule reflects a change in policy."). Rather, Defendants attack paragraphs 207 and 209 of Count Two as if they exist externally to those arguments and must be decided on their individual merits absent context. See Doc. 24 at 34–35.

Paragraph 207 of the Amended Complaint states: "Section 8305 does not authorize USDA or APHIS to mandate the use of EID eartags. The agencies' interpretation of 7 U.S.C. § 8305 is not entitled to deference and the Court 'must exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority.'" Doc. 20 ¶ 207 (alteration in original) (quoting Loper Bright Enters. v. Raimondo, 603 U.S. 369, 412 (2024)). Paragraph 209 states: "A necessity determination requires detailed findings to support an action, which APHIS failed to provide here." Id. ¶ 209.

The Court finds these paragraphs are best understood by reading them in coordination with, and as complementing, the remaining paragraphs in Plaintiffs' arbitrary and capricious claim.

Defendants' counsel stated at oral argument that this Court has discretion to decide these issues at summary judgment. Plaintiffs' counsel agreed and maintained that the two paragraphs

19

do not alter the Court's APA analysis. Because both parties and this Court agree that these paragraphs make allegations that can be considered as part of the Court's adjudication of the arbitrary and capricious claim at summary judgment, Defendants' motion to partially dismiss Count Two is denied.

## IV. Order

For the above reasons, and the record as it now exists before this Court, it is hereby

ORDERED that Defendants' Motion to Dismiss (Doc. 23) is granted in part and denied in part. Defendants' motion is granted with respect to Count One of Plaintiffs' First Amended Complaint. That claim is dismissed without prejudice. Defendants' motion to partially dismiss Count Two of Plaintiff's First Amended Complaint is denied. Likewise, Defendants' motion to dismiss based on a lack of standing is denied. It is further

ORDERED that Defendants' Motion to Dismiss (Doc. 18), filed before Plaintiffs' First Amended Complaint, is denied as moot.

DATED this 30th day of September, 2025.

BY THE COURT:

_____
ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE