# Exhibit 8

Excerpts from 78 Fed. Reg. 2,040 (Jan. 9, 2013)
AR-000496; AR-000518–31

**2040**    **Federal Register**/Vol. 78, No. 6/Wednesday, January 9, 2013/Rules and Regulations

## DEPARTMENT OF AGRICULTURE

### Animal and Plant Health Inspection Service

**9 CFR Parts 71, 77, 78, and 86**

[Docket No. APHIS–2009–0091]

RIN 0579–AD24

### Traceability for Livestock Moving Interstate

**AGENCY:** Animal and Plant Health Inspection Service, USDA.

**ACTION:** Final rule.

**SUMMARY:** We are amending the regulations to establish minimum national official identification and documentation requirements for the traceability of livestock moving interstate. Under this rulemaking, unless specifically exempted, livestock belonging to species covered by the regulations that are moved interstate must be officially identified and accompanied by an interstate certificate of veterinary inspection or other documentation. These regulations specify approved forms of official identification for each species but allow the livestock covered under this rulemaking to be moved interstate with another form of identification, as agreed upon by animal health officials in the shipping and receiving States or Tribes. The purpose of this rulemaking is to improve our ability to trace livestock in the event that disease is found.

**DATES:** *Effective Date:* March 11, 2013.

**FOR FURTHER INFORMATION CONTACT:** Mr. Neil Hammerschmidt, Program Manager, Animal Disease Traceability, VS, APHIS, 4700 River Road Unit 46, Riverdale, MD 20737–1231; (301) 851–3539.

**SUPPLEMENTARY INFORMATION:**

### Background

### I. Purpose of the Regulatory Action

*a. Need for the Regulatory Action*

Preventing and controlling animal disease is the cornerstone of protecting American animal agriculture. While ranchers and farmers work hard to protect their animals and their livelihoods, there is never a guarantee that their animals will be spared from disease. To support their efforts, the Animal and Plant Health Inspection Service (APHIS) of the U.S. Department of Agriculture (USDA) has promulgated regulations to prevent, control, and eradicate disease. Traceability does not prevent disease, but knowing where diseased and at-risk animals are, where they have been, and when, is indispensable in emergency response and in ongoing disease control and eradication programs.

We have clear indications that higher levels of official identification enhance tracing capability. For example, through the National Scrapie Eradication Program, 92 percent of the cull breeding sheep are officially identified at slaughter, primarily using flock identification eartags. This level of official identification made it possible in fiscal year 2010 to achieve traceback from slaughter of scrapie-positive sheep to the flock of origin or birth as part of the scrapie surveillance program 96 percent of the time, typically in a matter of minutes. Other diseases, particularly contagious ones, require that we trace to more than the birth premises, i.e., to other premises where the animal has been after leaving the birth premises but before going to slaughter, so the scrapie model is not a complete solution for such diseases.

APHIS believes that we must improve our tracing capabilities now not only to address current concerns, including the increasing number of cases of bovine tuberculosis, but also to ensure that we are well prepared to respond to new or foreign animal diseases in the future.

On August 11, 2011, we published in the **Federal Register** (76 FR 50082–50110, Docket No. APHIS–2009–0091) a proposal [1] to amend the regulations by establishing minimum national official identification and documentation requirements for the traceability of livestock moving interstate. Under the proposed regulations, unless specifically exempted, livestock belonging to species covered by the rulemaking that are moved interstate would have to be officially identified and accompanied by an interstate certificate of veterinary inspection (ICVI) or comparable appropriate documentation. The proposed rule specified approved forms of official identification for each species but allowed the livestock covered under the rulemaking to be moved interstate with another form of identification, as agreed upon by animal health officials in the shipping and receiving States or Tribes. The purpose of the proposed rule was to improve our ability to trace livestock in the event that disease is found.

*b. Legal Authority for the Regulatory Action*

Under the Animal Health Protection Act (AHPA, 7 U.S.C. 8301 *et seq.*), the Secretary of Agriculture has the authority to issue orders and promulgate regulations to prevent the introduction into the United States and the dissemination within the United States of any pest or disease of livestock. APHIS' regulations in 9 CFR subchapter B govern cooperative programs to control and eradicate communicable diseases of livestock. The regulations in 9 CFR subchapter C establish requirements for the interstate movement of livestock to prevent the dissemination of diseases of livestock within the United States.

### II. Summary of the Major Provisions of the Regulatory Action

*a. New or Revised Provisions*

This section provides a brief summary of the more significant changes we are making to this final rule in response to comments on the August 2011 proposed rule. Both the comments and the changes will be discussed in greater detail later in this document. The changes are listed below in the order they are discussed later in this document.

• We are extending the phase-out period for manufacturer-coded AINs from 12 months to 24 months to make the transition less burdensome for producers.

• We are revising the definition of *official eartag* and adding a new definition of *official eartag shield.* These changes will allow the use of State or Tribal postal abbreviation or codes within the U.S. Route Shield in lieu of "U.S."

• We are revising the language of the exemption from the traceability requirements for animals moved interstate to custom slaughter to indicate clearly that the exemption applies to all interstate movement to a custom slaughter facility. The proposed rule contained language that implied that the meat must be consumed by the person moving the animal to custom slaughter. This was not the intent of the proposed rule. A significant number of backyard poultry growers commented and expressed concerns about the official identification requirement for movement of poultry to a custom slaughter facility.

• We are reducing the requirement for the maintenance of interstate movement records for poultry and swine from 5 years to 2 because, as noted by numerous commenters representing those industries, poultry and swine have shorter lifespans than do the other livestock species covered by this rulemaking. The requirement will

---

[1] To view the proposed rule, supporting documents, and the comments we received, go to *http://www.regulations.gov/#!docketDetail;D=APHIS-2009-0091.*

AR-000496

would revert to older, more conventional technologies, such as metal tags and paper. Pennsylvania already uses RFID technology and has a rather sophisticated electronic database system. The commenter questioned how APHIS' proposed system would mesh with the electronic system that currently works very well in the State.

This rulemaking does not prohibit the use of RFID technology and electronic records. No State can deny entry to animals identified with electronic eartags and accompanied by electronic records if they met the standards provided for in these regulations. The regulations do, however, prohibit a State or Tribe from mandating the use of RFID or electronic records, or any other specific technology, for animals moving into their jurisdiction.

Therefore, for the reasons given in the proposed rule and in this document, we are adopting the proposed rule as a final rule, with the changes discussed in this document.

*Executive Orders 12866 and 13563 and Regulatory Flexibility Act*

This final rule has been determined to be significant for the purposes of Executive Order 12866 and, therefore, has been reviewed by the Office of Management and Budget.

We have prepared an economic analysis for this rule. The economic analysis provides a cost-benefit analysis, as required by Executive Orders 12866 and 13563, which direct agencies to assess all costs and benefits of available regulatory alternatives and, if regulation is necessary, to select regulatory approaches that maximize net benefits (including potential economic, environmental, public health and safety effects, and equity). Executive Order 13563 emphasizes the importance of quantifying both costs and benefits, of reducing costs, of harmonizing rules, and of promoting flexibility. The economic analysis also provides a final regulatory flexibility analysis that examines the potential economic effects of this rule on small entities, as required by the Regulatory Flexibility Act. The economic analysis is summarized below. Copies of the full analysis are available on the Regulations.gov Web site (see footnote 1 in this document for a link to Regulations.gov) or by contacting the person listed under **FOR FURTHER INFORMATION CONTACT.**

We are establishing general traceability regulations for certain livestock moving interstate. The purpose of this rulemaking is to improve APHIS' ability to trace such livestock in the event disease is found.

The benefits of this rulemaking are expected to exceed the costs overall.

While the rule applies to cattle and bison, horses and other equine species, poultry, sheep and goats, swine, and captive cervids, the focus of this analysis is on expected economic effects for the beef and dairy cattle industries. These enterprises are likely to be most affected operationally by the rule. For the other species, APHIS will largely maintain and build on the identification requirements of existing disease program regulations.

Costs for cattle producers are estimated in terms of activities that will need to be conducted for official animal identification and issuance of an ICVI, or other movement documentation, for livestock moved interstate. Incremental costs incurred are expected to vary depending upon a number of factors, including whether an enterprise does or does not already use eartags to identify individual cattle. For many operators, costs of official animal identification and ICVIs will be similar, respectively, to costs associated with current animal identification practices and the inshipment documentation currently required by individual States. Existing expenditures for these activities represent cost baselines for the private sector. To the extent that official animal identification and ICVIs will simply replace current requirements, the incremental costs of the rule for private enterprises will be minimal.

There are two main cost components for this rule: Using eartags to identify cattle and having ICVIs for cattle moved interstate. Approximately 20 percent of cattle are not currently eartagged as part of routine management practices, and an estimated 45 percent of cattle are identified for management purposes other than by using official identification. Annual incremental costs of official identification for cattle enterprises are estimated to total from $12.5 million to $30.5 million, assuming producers who are not already using official identification will tag their cattle as an activity separate from other routine management practices. More likely, some producers who are not already using official eartags can be expected to combine tagging with other routine activities such as vaccination or de-worming, thereby avoiding the costs associated with working cattle through a chute an additional time. Under this second scenario, the total incremental cost of official identification will range from $8.9 million to $19.7 million. After considering public comments, we have increased the estimated cost of this second scenario. We recognize that all producers may not combine tagging

with other management activities and therefore some will continue to incur higher costs.

All States currently require a certificate of veterinary inspection, commonly referred to as a health certificate, for the inshipment from other States of breeder cattle, and 48 States require one for feeder cattle. Annual incremental costs of the rule for ICVI's are estimated to range between $2 million and $3.8 million. If States currently requiring documentation other than ICVIs, such as owner-shipper statements or brand certificates, continue to accept these documents in lieu of an ICVI, as permitted by this rule, the ICVI requirement in this rule will not result in any additional costs.

The combined annual costs of the rule for cattle operations of official identification and movement documentation will range between $14.5 million and $34.3 million, assuming official identification will be undertaken separately from other routine management practices; or between $10.9 million and $23.5 million, assuming that some producers will combine tagging with other routine management practices that require working cattle through a chute.

Currently, States and Tribes bear responsibilities for the collection, maintenance, and retrieval of data on interstate livestock movements. These responsibilities will be maintained under this rulemaking, but the way they are administered will likely change. Based on availability, Federal funding will be allocated to assist States and Tribes as necessary in automating data collection, maintenance, and retrieval to advance animal disease traceability.

Direct benefits of improved traceability include the public and private cost savings expected to be gained under the rule. Case studies for bovine tuberculosis, bovine brucellosis, and BSE illustrate the inefficiencies currently often faced in tracing disease occurrences due to inadequate animal identification and the potential gains in terms of cost savings that may derive from the rule.

Benefits of the traceability system are for the most part potential benefits that rest on largely unknown probabilities of disease occurrence and reactions by domestic and foreign markets. The primary benefit of the regulations will be the enhanced ability of the United States to regionalize and compartmentalize animal health issues more quickly, minimizing losses and enabling reestablishment of foreign and domestic market access with minimum delay in the wake of an animal disease event.

AR-000518

Having a traceability system in place will allow the United States to trace animal disease more quickly and efficiently, thereby minimizing not only the spread of disease but also the trade impacts an outbreak may have. The value of U.S. exports of live cattle in 2010 was $131.8 million, and the value of U.S. beef exports totaled $2.8 billion. The value of U.S. cattle and calf production in 2009 was $31.8 billion. The estimated incremental costs of the rule for cattle enterprises—between $14.5 million and $34.3 million, assuming official identification is a separately performed activity, and between $10.9 million and $23.5 million, assuming some official identification is combined by some operations with other routine management practices that require working cattle through a chute—represent about one-tenth of one percent of the value of domestic cattle and calf production. If there were an animal disease outbreak in the United States that affected our domestic and international beef markets, preservation of only a very small proportion of these markets would justify estimated private sector costs attributable to the animal disease traceability program.

Most cattle operations in the United States are small entities. USDA will ensure the rule's workability and cost effectiveness by collaborating in its implementation with representatives from States, Tribes, and affected industries.

*Executive Order 12372*

This program/activity is listed in the Catalog of Federal Domestic Assistance under No. 10.025 and is subject to Executive Order 12372, which requires intergovernmental consultation with State and local officials. (See 7 CFR part 3015, subpart V.)

*Executive Order 13175*

In accordance with Executive Order 13175, APHIS has consulted with Tribal Government officials. A tribal summary impact statement, published concurrently with the August 2011 proposed rule, includes a summary of Tribal officials' concerns and of how APHIS has attempted to address them.

Copies of the tribal impact summary statement are available by contacting the person listed under **FOR FURTHER INFORMATION CONTACT** or on the Regulations.gov Web site (see footnote 1 in this document for a link to Regulations.gov).

*Executive Order 12988*

This final rule has been reviewed under Executive Order 12988, Civil

Justice Reform. This rule: (1) Preempts State and local laws and regulations that are in conflict with this rule, as provided in § 86.8; (2) has no retroactive effect; and (3) does not require administrative proceedings before parties may file suit in court challenging this rule.

*Paperwork Reduction Act*

This final rule contains two information collection requirements that were not included in the proposed rule. Specifically, in response to comments we received on the proposed rule, this final rule allows States and Tribes to use eartags with their State or Tribal code printed inside an official eartag shield. The rule also includes an ICVI-related recordkeeping requirement for accredited veterinarians that was not noted in the proposed rule. Notwithstanding these additional requirements, the total paperwork burden is reduced from what we determined it to be in the proposed rule because we did not adequately account for the increasing use by States of electronic recordkeeping for ICVIs and, as a result, overestimated the ICVI reporting burden for the States. In accordance with section 3507(d) of the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*), this information collection requirement has been submitted for approval to the Office of Management and Budget (OMB). When OMB notifies us of its decision, we will publish a document in the **Federal Register** providing notice of the assigned OMB control number or, if approval is denied, providing notice of what action we plan to take.

**List of Subjects**

*9 CFR Parts 71, 77, and 78*

Animal diseases, Bison, Cattle, Hogs, Livestock, Poultry and poultry products, Quarantine, Reporting and recordkeeping requirements, Transportation, Tuberculosis.

*9 CFR Part 86*

Animal diseases, Bison, Cattle, Interstate movement, Livestock, Official identification, Reporting and recordkeeping requirements, Traceability.

Accordingly, we are amending 9 CFR chapter I as follows:

**PART 71—GENERAL PROVISIONS**

■ 1. The authority citation for part 71 continues to read as follows:

**Authority:** 7 U.S.C. 8301–8317; 7 CFR 2.22, 2.80, and 371.4.

■ 2. Section 71.1 is amended by revising the definitions of *animal identification number (AIN), group/lot identification number (GIN), livestock, official eartag, official identification device or method,* and *premises identification number (PIN),* removing the definitions of *moved (movement) in interstate commerce* and *United States Department of Agriculture Backtag,* and adding definitions of *flock-based number system, flock identification number (FIN), move, National Uniform Eartagging System (NUES), official eartag shield, official identification number,* and *United States Department of Agriculture (USDA) approved backtag* in alphabetical order to read as follows:

**§ 71.1  Definitions.**

\*    \*    \*    \*    \*

*Animal identification number (AIN).* A numbering system for the official identification of individual animals in the United States that provides a nationally unique identification number for each animal. The AIN consists of 15 digits, with the first 3 being the country code (840 for the United States or a unique country code for any U.S. territory that has such a code and elects to use it in place of the 840 code). The alpha characters USA or the numeric code assigned to the manufacturer of the identification device by the International Committee on Animal Recording may be used as an alternative to the 840 or other prefix representing a U.S territory; however, only the AIN beginning with the 840 or other prefix representing a U.S. territory will be recognized as official for use on AIN tags applied to animals on or after March 11, 2015. The AIN beginning with the 840 prefix may not be applied to animals known to have been born outside the United States.

\*    \*    \*    \*    \*

*Flock-based number system.* The flock-based number system combines a flock identification number (FIN) with a producer's unique livestock production numbering system to provide a nationally unique identification number for an animal.

*Flock identification number (FIN).* A nationally unique number assigned by a State, Tribal, or Federal animal health authority to a group of animals that are managed as a unit on one or more premises and are under the same ownership.

\*    \*    \*    \*    \*

*Group/lot identification number (GIN).* The identification number used to uniquely identify a "unit of animals" of the same species that is managed together as one group throughout the

**2064**    **Federal Register** / Vol. 78, No. 6 / Wednesday, January 9, 2013 / Rules and Regulations

preharvest production chain. When a GIN is used, it is recorded on documents accompanying the animals moving interstate; it is not necessary to have the GIN attached to each animal.

\*    \*    \*    \*    \*

*Livestock.* All farm-raised animals.

\*    \*    \*    \*    \*

*Move.* To carry, enter, import, mail, ship, or transport; to aid, abet, cause, or induce carrying, entering, importing, mailing, shipping, or transporting; to offer to carry, enter, import, mail, ship, or transport; to receive in order to carry, enter, import, mail, ship, or transport; or to allow any of these activities.

*National Uniform Eartagging System (NUES).* A numbering system for the official identification of individual animals in the United States that provides a nationally unique identification number for each animal.

\*    \*    \*    \*    \*

*Official eartag.* An identification tag approved by APHIS that bears an official identification number for individual animals. Beginning March 11, 2014, all official eartags manufactured must bear an official eartag shield. Beginning March 11, 2015, all official eartags applied to animals must bear an official eartag shield. The design, size, shape, color, and other characteristics of the official eartag will depend on the needs of the users, subject to the approval of the Administrator. The official eartag must be tamper-resistant and have a high retention rate in the animal.

*Official eartag shield.* The shield-shaped graphic of the U.S. Route Shield with "U.S." or the State postal abbreviation or Tribal alpha code imprinted within the shield.

*Official identification device or method.* A means approved by the Administrator of applying an official identification number to an animal of a specific species or associating an official identification number with an animal or group of animals of a specific species.

*Official identification number.* A nationally unique number that is permanently associated with an animal or group of animals and that adheres to one of the following systems:

(1) National Uniform Eartagging System (NUES).

(2) Animal identification number (AIN).

(3) Location-based number system.

(4) Flock-based number system.

(5) Any other numbering system approved by the Administrator for the official identification of animals.

\*    \*    \*    \*    \*

*Premises identification number (PIN).* A nationally unique number assigned by a State, Tribal, and/or Federal animal health authority to a premises that is, in the judgment of the State, Tribal, and/or Federal animal health authority a geographically distinct location from other premises. The PIN may be used in conjunction with a producer's own unique livestock production numbering system to provide a nationally unique and herd-unique identification number for an animal. It may be used as a component of a group/lot identification number (GIN).

\*    \*    \*    \*    \*

*United States Department of Agriculture (USDA) approved backtag.* A backtag issued by APHIS that provides a temporary unique identification for each animal.

### § 71.18   [Removed and Reserved]

■ 3. Section 71.18 is removed and reserved.

### § 71.19   [Amended]

■ 4. In § 71.19, paragraphs (b)(2) and (d) introductory text are amended by removing the words "United States Department of Agriculture backtags" and adding the words "United States Department of Agriculture (USDA) approved backtag" in their place each time they occur.

### § 71.22   [Removed and Reserved]

■ 5. Section 71.22 is removed and reserved.

### PART 77—TUBERCULOSIS

■ 6. The authority citation for part 77 continues to read as follows:

**Authority:** 7 U.S.C. 8301–8317; 7 CFR 2.22, 2.80, and 371.4.

■ 7. Section 77.2 is amended by revising the definitions of *animal identification number (AIN), livestock, official eartag,* and *premises identification number (PIN),* removing the definitions of *certificate, moved, moved directly,* and *premises of origin identification,* and adding definitions of *directly, interstate certificate of veterinary inspection (ICVI), location-based numbering system, location identification (LID) number, move, National Uniform Eartagging System (NUES), official eartag shield, official identification number, recognized slaughtering establishment,* and *United States Department of Agriculture (USDA) approved backtag* in alphabetical order to read as follows:

### § 77.2   Definitions.

\*    \*    \*    \*    \*

*Animal identification number (AIN).* A numbering system for the official identification of individual animals in the United States that provides a nationally unique identification number for each animal. The AIN consists of 15 digits, with the first 3 being the country code (840 for the United States or a unique country code for any U.S. territory that has such a code and elects to use it in place of the 840 code). The alpha characters USA or the numeric code assigned to the manufacturer of the identification device by the International Committee on Animal Recording may be used as an alternative to the 840 or other prefix representing a U.S territory; however, only the AIN beginning with the 840 or other prefix representing a U.S. territory will be recognized as official for use on AIN tags applied to animals on or after March 11, 2015. The AIN beginning with the 840 prefix may not be applied to animals known to have been born outside the United States.

\*    \*    \*    \*    \*

*Directly.* Moved in a means of conveyance, without stopping to unload while en route, except for stops of less than 24 hours to feed, water, or rest the animals being moved, and with no commingling of animals at such stops.

\*    \*    \*    \*    \*

*Interstate certificate of veterinary inspection (ICVI).* An official document issued by a Federal, State, Tribal, or accredited veterinarian certifying the inspection of animals in preparation for interstate movement.

(a) The ICVI must show the species of animals covered by the ICVI; the number of animals covered by the ICVI; the purpose for which the animals are to be moved; the address at which the animals were loaded for interstate movement; the address to which the animals are destined; and the names of the consignor and the consignee and their addresses if different from the address at which the animals were loaded or the address to which the animals are destined. Additionally, unless the species-specific requirements for ICVIs provide an exception, the ICVI must list the official identification number of each animal, except as provided in paragraph (b) of this definition, or group of animals moved that is required to be officially identified, or, if an alternative form of identification has been agreed upon by the sending and receiving States, the ICVI must include a record of that identification. If animals moving under a GIN also have individual official identification, only the GIN must be listed on the ICVI. An ICVI may not be issued for any animal that is not officially identified if official

AR-000520

identification is required. If the animals are not required by the regulations to be officially identified, the ICVI must state the exemption that applies (e.g., the cattle and bison do not belong to one of the classes of cattle and bison to which the official identification requirements of 9 CFR part 86 apply). If the animals are required to be officially identified but the identification number does not have to be recorded on the ICVI, the ICVI must state that all animals to be moved under the ICVI are officially identified.

(b) As an alternative to typing or writing individual animal identification on an ICVI, if agreed to by the receiving State or Tribe, another document may be used to provide this information, but only under the following conditions:

(1) The document must be a State form or APHIS form that requires individual identification of animals or a printout of official identification numbers generated by computer or other means;

(2) A legible copy of the document must be stapled to the original and each copy of the ICVI;

(3) Each copy of the document must identify each animal to be moved with the ICVI, but any information pertaining to other animals, and any unused space on the document for recording animal identification, must be crossed out in ink; and

(4) The following information must be written in ink in the identification column on the original and each copy of the ICVI and must be circled or boxed, also in ink, so that no additional information can be added:

(i) The name of the document; and

(ii) Either the unique serial number on the document or, if the document is not imprinted with a serial number, both the name of the person who prepared the document and the date the document was signed.

*Livestock.* All farm-raised animals.

*Location-based numbering system.* The location-based number system combines a State or Tribal issued location identification (LID) number or a premises identification number (PIN) with a producer's unique livestock production numbering system to provide a nationally unique and herd-unique identification number for an animal.

*Location identification (LID) number.* A nationally unique number issued by a State, Tribal, and/or Federal animal health authority to a location as determined by the State or Tribe in which it is issued. The LID number may be used in conjunction with a producer's own unique livestock production numbering system to

provide a nationally unique and herd-unique identification number for an animal. It may also be used as a component of a group/lot identification number (GIN).

*Move.* To carry, enter, import, mail, ship, or transport; to aid, abet, cause, or induce carrying, entering, importing, mailing, shipping, or transporting; to offer to carry, enter, import, mail, ship, or transport; to receive in order to carry, enter, import, mail, ship, or transport; or to allow any of these activities.

*National Uniform Eartagging System (NUES).* A numbering system for the official identification of individual animals in the United States that provides a nationally unique identification number for each animal.

*Official eartag.* An identification tag approved by APHIS that bears an official identification number for individual animals. Beginning March 11, 2014, all official eartags manufactured must bear an official eartag shield. Beginning March 11, 2015, all official eartags applied to animals must bear an official eartag shield. The design, size, shape, color, and other characteristics of the official eartag will depend on the needs of the users, subject to the approval of the Administrator. The official eartag must be tamper-resistant and have a high retention rate in the animal.

*Official eartag shield.* The shield-shaped graphic of the U.S. Route Shield with "U.S." or the State postal abbreviation or Tribal alpha code imprinted within the shield.

*Official identification number.* A nationally unique number that is permanently associated with an animal or group of animals and that adheres to one of the following systems:

(1) National Uniform Eartagging System (NUES).

(2) Animal identification number (AIN).

(3) Flock-based number system.

(4) Location-based number system.

(5) Any other numbering system approved by the Administrator for the official identification of animals.

\*    \*    \*    \*    \*

*Premises identification number (PIN).* A nationally unique number assigned by a State, Tribal, and/or Federal animal health authority to a premises that is, in the judgment of the State, Tribal, and/or Federal animal health authority a geographically distinct location from other premises. The PIN may be used in conjunction with a producer's own livestock production numbering system to provide a nationally unique and herd-unique identification number for an animal. It may be used as a component

of a group/lot identification number (GIN).

*Recognized slaughtering establishment.* Any slaughtering facility operating under the Federal Meat Inspection Act (21 U.S.C. 601 *et seq.*), the Poultry Products Inspection Act (21 U.S.C. 451 *et seq.*), or State meat or poultry inspection acts that is approved in accordance with 9 CFR 71.21.

\*    \*    \*    \*    \*

*United States Department of Agriculture (USDA) approved backtag.* A backtag issued by APHIS that provides a temporary unique identification for each animal.

\*    \*    \*    \*    \*

■ 8. Section 77.5 is amended by removing the definition of *approved slaughtering establishment* and adding a definition of *recognized slaughtering establishment* in alphabetical order to read as follows:

**§ 77.5    Definitions.**

\*    \*    \*    \*    \*

*Recognized slaughtering establishment.* Any slaughtering facility operating under the Federal Meat Inspection Act (21 U.S.C. 601 *et seq.*), the Poultry Products Inspection Act (21 U.S.C. 451 *et seq.*), or State meat or poultry inspection acts that is approved in accordance with 9 CFR 71.21.

\*    \*    \*    \*    \*

■ 9. Section 77.8 is revised to read as follows:

**§ 77.8    Interstate movement from accredited-free States and zones.**

Cattle or bison that originate in an accredited-free State or zone may be moved interstate in accordance with 9 CFR part 86 without further restriction under this part.

■ 10. Section 77.10 is revised to read as follows:

**§ 77.10    Interstate movement from modified accredited advanced States and zones.**

Cattle or bison that originate in a modified accredited advanced State or zone, and that are not known to be infected with or exposed to tuberculosis, may be moved interstate only in accordance with 9 CFR part 86 and, if moved anywhere other than directly to slaughter at a recognized slaughtering establishment, under one of the following additional conditions:

(a) The cattle or bison are sexually intact heifers moved to an approved feedlot, or are steers or spayed heifers, and are officially identified.

(b) The cattle or bison are from an accredited herd, are officially identified, and are accompanied by an ICVI stating

that the accredited herd completed the testing necessary for accredited status with negative results within 1 year prior to the date of movement.

(c) The cattle or bison are sexually intact animals; are not from an accredited herd; are officially identified; and are accompanied by an ICVI stating that they were negative to an official tuberculin test conducted within 60 days prior to the date of movement.

(Approved by the Office of Management and Budget under control numbers 0579–0146, 0579–0220, and 0579–0229)

■ 11. Section 77.12 is revised to read as follows:

**§ 77.12   Interstate movement from modified accredited States and zones.**

Cattle or bison that originate in a modified accredited State or zone, and that are not known to be infected with or exposed to tuberculosis, may be moved interstate only in accordance with 9 CFR part 86 and, if moved anywhere other than directly to slaughter at a recognized slaughtering establishment, under one of the following additional conditions:

(a) The cattle or bison are sexually intact heifers moved to an approved feedlot, or are steers or spayed heifers; are officially identified, and are accompanied by an ICVI stating that they were classified negative to an official tuberculin test conducted within 60 days prior to the date of movement.

(b) The cattle or bison are from an accredited herd, are officially identified, and are accompanied by an ICVI stating that the accredited herd completed the testing necessary for accredited status with negative results within 1 year prior to the date of movement.

(c) The cattle or bison are sexually intact animals; are not from an accredited herd; are officially identified; and are accompanied by an ICVI stating that the herd from which they originated was negative to a whole herd test conducted within 1 year prior to the date of movement and that the individual animals to be moved were negative to an additional official tuberculin test conducted within 60 days prior to the date of movement, except that the additional test is not required if the animals are moved interstate within 60 days following the whole herd test.

(Approved by the Office of Management and Budget under control number 0579–0146)

■ 12. Section 77.14 is revised to read as follows:

**§ 77.14   Interstate movement from accreditation preparatory States and zones.**

Cattle or bison that originate in an accreditation preparatory State or zone, and that are not known to be infected with or exposed to tuberculosis, may be moved interstate only in accordance with 9 CFR part 86 and, if moved anywhere other than directly to slaughter at a recognized slaughtering establishment, under one of the following additional conditions:

(a) The cattle or bison are sexually intact heifers moved to an approved feedlot, or are steers or spayed heifers; are officially identified; and are accompanied by an ICVI stating that the herd from which they originated was negative to a whole herd test conducted within 1 year prior to the date of movement and that the individual animals to be moved were negative to an additional official tuberculin test conducted within 60 days prior to the date of movement; *Except that:* The additional test is not required if the animals are moved interstate within 6 months following the whole herd test.

(b) The cattle or bison are from an accredited herd; are officially identified; and are accompanied by an ICVI stating that the accredited herd completed the testing necessary for accredited status with negative results within 1 year prior to the date of movement and that the animals to be moved were negative to an official tuberculin test conducted within 60 days prior to the date of movement.

(c) The cattle or bison are sexually intact animals; are not from an accredited herd; are officially identified; and are accompanied by an ICVI stating that the herd from which they originated was negative to a whole herd test conducted within 1 year prior to the date of movement and that the individual animals to be moved were negative to two additional official tuberculin tests conducted at least 60 days apart and no more than 6 months apart, with the second test conducted within 60 days prior to the date of movement; *Except that:* The second additional test is not required if the animals are moved interstate within 60 days following the whole herd test.

(Approved by the Office of Management and Budget under control number 0579–0146)

**§ 77.16   [Amended]**

■ 13. Section 77.16 is amended by removing the words "an approved" and adding the words "a recognized" in their place.

**§ 77.17   [Amended]**

■ 14. Section 77.17 is amended as follows:

■ a. In paragraphs (a) introductory text and (b) introductory text, by removing the words "an approved" and adding the words "a recognized" in their place.
■ b. In paragraph (a)(4), by removing the words "transportation document" and adding the words "VS Form 1–27" in their place.
■ c. In paragraph (c), by removing the words "to an approved slaughtering establishment" and adding the words "to a recognized slaughtering establishment in accordance with 9 CFR part 86" in their place.
■ 15. Section 77.23 is revised to read as follows:

**§ 77.23   Interstate movement from accredited-free States and zones.**

Notwithstanding any other provisions of this part, captive cervids that originate in an accredited-free State or zone may be moved interstate in accordance with 9 CFR part 86 and without further restriction under this part.

■ 16. Section 77.25 is revised to read as follows:

**§ 77.25   Interstate movement from modified accredited advanced States and zones.**

Captive cervids that originate in a modified accredited advanced State or zone, and that are not known to be infected with or exposed to tuberculosis, may be moved interstate only in accordance with 9 CFR part 86 and, if moved anywhere other than directly to slaughter at a recognized slaughtering establishment, under one of the following additional conditions:

(a) The captive cervids are from an accredited herd, qualified herd, or monitored herd; are officially identified; and are accompanied by an ICVI stating that the herd completed the requirements for accredited herd, qualified herd, or monitored herd status within 24 months prior to the date of movement.

(b) The captive cervids are officially identified and are accompanied by an ICVI stating that they were negative to an official tuberculin test conducted within 90 days prior to the date of movement.

(Approved by the Office of Management and Budget under control number 0579–0146)

■ 17. Section 77.27 is revised to read as follows:

**§ 77.27   Interstate movement from modified accredited States and zones.**

Except for captive cervids from a qualified herd or monitored herd, as provided in §§ 77.36 and 77.37, respectively, captive cervids that originate in a modified accredited State or zone, and that are not known to be

AR-000522

infected with or exposed to tuberculosis, may be moved interstate only in accordance with 9 CFR part 86 and, if moved anywhere other than directly to slaughter at a recognized slaughtering establishment, under one of the following additional conditions:

(a) The captive cervids are from an accredited herd, are officially identified, and are accompanied by an ICVI stating that the accredited herd completed the testing necessary for accredited status with negative results within 24 months prior to the date of movement.

(b) The captive cervids are sexually intact animals; are not from an accredited herd; are officially identified; and are accompanied by an ICVI stating that the herd from which they originated was negative to a whole herd test conducted within 1 year prior to the date of movement and that the individual animals to be moved were negative to an additional official tuberculin test conducted within 90 days prior to the date of movement; *Except that:* The additional test is not required if the animals are moved interstate within 6 months following the whole herd test.

(Approved by the Office of Management and Budget under control number 0579–0146)

■ 18. Section 77.29 is revised to read as follows:

### § 77.29 Interstate movement from accreditation preparatory States and zones.

Except for captive cervids from a qualified herd or monitored herd, as provided in §§ 77.36 and 77.37, respectively, captive cervids that originate in an accreditation preparatory State or zone, and that are not known to be infected with or exposed to tuberculosis, may be moved interstate only in accordance with 9 CFR part 86 and, if moved anywhere other than directly to slaughter at a recognized slaughtering establishment, under one of the following additional conditions:

(a) The captive cervids are from an accredited herd; are officially identified; and are accompanied by an ICVI stating that the accredited herd completed the testing necessary for accredited status with negative results within 24 months prior to the date of movement and that the individual animals to be moved were negative to an official tuberculin test conducted within 90 days prior to the date of movement.

(b) The captive cervids are sexually intact animals; are not from an accredited herd; are officially identified; and are accompanied by an ICVI stating that the herd from which they originated was negative to a whole herd test conducted within 1 year prior to the

date of movement and that the individual animals to be moved were negative to two additional official tuberculin tests conducted at least 90 days apart and no more than 6 months apart, with the second test conducted within 90 days prior to the date of movement; *Except that:* The second additional test is not required if the animals are moved interstate within 6 months following the whole herd test.

(Approved by the Office of Management and Budget under control number 0579–0146)

### § 77.31    [Amended]

■ 19. Section 77.31 is amended by removing the words "an approved" and adding the words "a recognized" in their place.

### § 77.32    [Amended]

■ 20. Section 77.32 is amended as follows:
■ a. In paragraph (a), by removing the words "§§ 77.25(a), 77.27(a), 77.29(a), and 77.31(d)" and adding the words "9 CFR part 86" in their place.
■ b. In paragraph (c), by removing the words "accompanied by a certificate" and adding the words "officially identified and accompanied by an ICVI" in their place.
■ 21. In § 77.35, paragraph (b) is revised to read as follows:

### § 77.35    Interstate movement from accredited herds.

\*    \*    \*    \*    \*

(b) *Movement allowed.* Except as provided in § 77.23 with regard to captive cervids that originate in an accredited-free State or zone, and except as provided in § 77.31 with regard to captive cervids that originate in a nonaccredited State or zone, a captive cervid from an accredited herd may be moved interstate without further tuberculosis testing only if it is officially identified and is accompanied by an ICVI, as provided in § 77.32(c), that includes a statement that the captive cervid is from an accredited herd. If a group of captive cervids from an accredited herd is being moved interstate together to the same destination, all captive cervids in the group may be moved under one ICVI.

\*    \*    \*    \*    \*

■ 22. In § 77.36, paragraphs (b)(2), (b)(3), and (b)(4) are revised to read as follows:

### § 77.36    Interstate movement from qualified herds.

\*    \*    \*    \*    \*

(b) \*    \*    \*
(2) The captive cervid is officially identified and is accompanied by an ICVI, as provided in § 77.32(c), that

includes a statement that the captive cervid is from a qualified herd. Except as provided in paragraphs (b)(3) and (b)(4) of this section, the ICVI must also state that the captive cervid has tested negative to an official tuberculosis test conducted within 90 days prior to the date of movement. If a group of captive cervids from a qualified herd is being moved interstate together to the same destination, all captive cervids in the group may be moved under one ICVI.

(3) Captive cervids under 1 year of age that are natural additions to the qualified herd or that were born in and originate from a classified herd may move without testing, provided that they are officially identified and that the ICVI accompanying them states that the captive cervids are natural additions to the qualified herd or were born in and originated from a classified herd and have not been exposed to captive cervids from an unclassified herd.

(4) Captive cervids being moved interstate for the purpose of exhibition only may be moved without testing, provided they are returned to the premises of origin no more than 90 days after leaving the premises, have no contact with other livestock during movement and exhibition, are officially identified, and are accompanied by an ICVI that includes a statement that the captive cervid is from a qualified herd and will otherwise meet the requirements of this paragraph.

\*    \*    \*    \*    \*

■ 23. In § 77.37, paragraphs (b)(2) and (b)(3) are revised to read as follows:

### § 77.37    Interstate movement from monitored herds.

\*    \*    \*    \*    \*

(b) \*    \*    \*
(2) The captive cervid is officially identified and is accompanied by an ICVI, as provided in § 77.32(c), that includes a statement that the captive cervid is from a monitored herd. Except as provided in paragraph (b)(3) of this section, the ICVI must also state that the captive cervid has tested negative to an official tuberculosis test conducted within 90 days prior to the date of movement. If a group of captive cervids from a monitored herd is being moved interstate together to the same destination, all captive cervids in the group may be moved under one ICVI.

(3) Captive cervids under 1 year of age that are natural additions to the monitored herd or that were born in and originate from a classified herd may move without testing, provided that they are officially identified and that the ICVI accompanying them states that the captive cervids are natural additions to the monitored herd or were born in and

AR-000523

originated from a classified herd and have not been exposed to captive cervids from an unclassified herd.

\* \* \* \* \*

## § 77.40 [Amended]

■ 24. In § 77.40, paragraph (a)(3) is amended by removing the words ''an approved'' and adding the words ''a recognized'' in their place.

## PART 78—BRUCELLOSIS

■ 25. The authority citation for part 78 continues to read as follows:

**Authority:** 7 U.S.C. 8301–8317; 7 CFR 2.22, 2.80, and 371.4.

■ 26. Section 78.1 is amended by revising the definitions of *animal identification number (AIN), dairy cattle, directly, market cattle identification test cattle, official eartag, officially identified,* and *recognized slaughtering establishment,* removing the definitions of *certificate, official identification device or method,* and *rodeo bulls,* and adding definitions of *commuter herd, commuter herd agreement, interstate certificate of veterinary inspection (ICVI), location-based numbering system, location identification (LID) number, National Uniform Eartagging System (NUES), official eartag shield, official identification number,* and *rodeo cattle* in alphabetical order to read as follows:

## § 78.1 Definitions.

\* \* \* \* \*

*Animal identification number (AIN).* A numbering system for the official identification of individual animals in the United States that provides a nationally unique identification number for each animal. The AIN consists of 15 digits, with the first 3 being the country code (840 for the United States or a unique country code for any U.S. territory that has such a code and elects to use it in place of the 840 code). The alpha characters USA or the numeric code assigned to the manufacturer of the identification device by the International Committee on Animal Recording may be used as an alternative to the 840 or other prefix representing a U.S territory; however, only the AIN beginning with the 840 or other prefix representing a U.S. territory will be recognized as official for use on AIN tags applied to animals on or after March 11, 2015. The AIN beginning with the 840 prefix may not be applied to animals known to have been born outside the United States.

\* \* \* \* \*

*Commuter herd.* A herd of cattle or bison moved interstate during the course of normal livestock management operations and without change of ownership directly between two premises, as provided in a commuter herd agreement.

*Commuter herd agreement.* A written agreement between the owner(s) of a herd of cattle or bison and the animal health officials for the States or Tribes of origin and destination specifying the conditions required for the interstate movement from one premises to another in the course of normal livestock management operations and specifying the time period, up to 1 year, that the agreement is effective. A commuter herd agreement may be renewed annually.

\* \* \* \* \*

*Dairy cattle.* All cattle, regardless of age or sex or current use, that are of a breed(s) used to produce milk or other dairy products for human consumption, including, but not limited to, Ayrshire, Brown Swiss, Holstein, Jersey, Guernsey, Milking Shorthorn, and Red and Whites.

\* \* \* \* \*

*Directly.* Moved in a means of conveyance, without stopping to unload while en route, except for stops of less than 24 hours to feed, water or rest the animals being moved, and with no commingling of animals at such stops.

\* \* \* \* \*

*Interstate certificate of veterinary inspection (ICVI).* An official document issued by a Federal, State, Tribal, or accredited veterinarian certifying the inspection of animals in preparation for interstate movement.

(1) The ICVI must show the species of animals covered by the ICVI; the number of animals covered by the ICVI; the purpose for which the animals are to be moved; the address at which the animals were loaded for interstate movement; the address to which the animals are destined; and the names of the consignor and the consignee and their addresses if different from the address at which the animals were loaded or the address to which the animals are destined. Additionally, unless the species-specific requirements for ICVIs provide an exception, the ICVI must list the official identification number of each animal, except as provided in paragraph (2) of this definition, or group of animals moved that is required to be officially identified, or, if an alternative form of identification has been agreed upon by the sending and receiving States, the ICVI must include a record of that identification. If animals moving under a GIN also have individual official identification, only the GIN must be listed on the ICVI. An ICVI may not be issued for any animal that is not officially identified if official identification is required. If the animals are not required by the regulations to be officially identified, the ICVI must state the exemption that applies (e.g., the cattle and bison do not belong to one of the classes of cattle and bison to which the official identification requirements of 9 CFR part 86 apply). If the animals are required to be officially identified but the identification number does not have to be recorded on the ICVI, the ICVI must state that all animals to be moved under the ICVI are officially identified.

(2) As an alternative to typing or writing individual animal identification on an ICVI, if agreed to by the receiving State or Tribe, another document may be used to provide this information, but only under the following conditions:

(i) The document must be a State form or APHIS form that requires individual identification of animals or a printout of official identification numbers generated by computer or other means;

(ii) A legible copy of the document must be stapled to the original and each copy of the ICVI;

(iii) Each copy of the document must identify each animal to be moved with the ICVI, but any information pertaining to other animals, and any unused space on the document for recording animal identification, must be crossed out in ink; and

(iv) The following information must be written in ink in the identification column on the original and each copy of the ICVI and must be circled or boxed, also in ink, so that no additional information can be added:

(A) The name of the document; and

(B) Either the unique serial number on the document or, if the document is not imprinted with a serial number, both the name of the person who prepared the document and the date the document was signed.

*Location-based number system.* The location-based number system combines a State or Tribal issued location identification (LID) number or a premises identification number (PIN) with a producer's unique livestock production numbering system to provide a nationally unique and herd-unique identification number for an animal.

*Location identification (LID) number.* A nationally unique number issued by a State, Tribal, and/or Federal animal health authority to a location as determined by the State or Tribe in which it is issued. The LID number may be used in conjunction with a producer's own unique livestock production numbering system to

AR-000524

provide a nationally unique and herd-unique identification number for an animal. It may also be used as a component of a group/lot identification number (GIN).

*Market cattle identification test cattle.* Cows and bulls 18 months of age or over which have been moved to recognized slaughtering establishments, and test-eligible cattle which are subjected to an official test for the purposes of movement at farms, ranches, auction markets, stockyards, quarantine feedlots, or other assembly points. Such cattle must be identified with an official identification device as specified in § 86.4(a) of this chapter prior to or at the first market, stockyard, quarantine feedlot, or slaughtering establishment they reach.

\*    \*    \*    \*    \*

*National Uniform Eartagging System (NUES).* A numbering system for the official identification of individual animals in the United States that provides a nationally unique identification number for each animal.

\*    \*    \*    \*    \*

*Official eartag.* An identification tag approved by APHIS that bears an official identification number for individual animals. Beginning March 11, 2014, all official eartags manufactured must bear an official eartag shield. Beginning March 11, 2015, all official eartags applied to animals must bear an official eartag shield. The design, size, shape, color, and other characteristics of the official eartag will depend on the needs of the users, subject to the approval of the Administrator. The official eartag must be tamper-resistant and have a high retention rate in the animal.

*Official eartag shield.* The shield-shaped graphic of the U.S. Route Shield with "U.S." or the State postal abbreviation or Tribal alpha code imprinted within the shield.

\*    \*    \*    \*    \*

*Official identification number.* A nationally unique number that is permanently associated with an animal or group of animals and that adheres to one of the following systems:

(1) National Uniform Eartagging System.

(2) Animal identification number (AIN).

(3) Location-based number system.

(4) Flock-based number system.

(5) Any other numbering system approved by the Administrator for the official identification of animals.

*Officially identified.* Identified by means of an official identification

device or method approved by the Administrator.

\*    \*    \*    \*    \*

*Recognized slaughtering establishment.* Any slaughtering facility operating under the Federal Meat Inspection Act (21 U.S.C. 601 *et seq.*), the Poultry Products Inspection Act (21 U.S.C. 451 *et seq.*), or State meat or poultry inspection acts that is approved in accordance with 9 CFR 71.21.

*Rodeo cattle.* Cattle used at rodeos or competitive events.

\*    \*    \*    \*    \*

■ 27. Section 78.2 is revised to read as follows:

**§ 78.2   Handling of certificates, permits, and "S" brand permits for interstate movement of animals.**

(a) Any ICVI, other interstate movement document used in lieu of an ICVI, permit, or "S" brand permit required by this part for the interstate movement of animals shall be delivered to the person moving the animals by the shipper or shipper's agent at the time the animals are delivered for movement and shall accompany the animals to their destination and be delivered to the consignee or the person receiving the animals.

(b) The APHIS representative, State representative, Tribal representative, or accredited veterinarian issuing an ICVI or other interstate movement document used in lieu of an ICVI or a permit, except for permits for entry and "S" brand permits, that is required for the interstate movement of animals under this part shall forward a copy of the ICVI, other interstate movement document used in lieu of an ICVI, or permit to the State animal health official of the State of origin within 5 working days. The State animal health official of the State of origin shall forward a copy of the ICVI, other interstate movement document used in lieu of an ICVI, or permit to the State animal health official of the State of destination within 5 working days.

(Approved by the Office of Management and Budget under control number 0579–0047)

■ 28. Section 78.5 is revised to read as follows:

**§ 78.5   General restrictions.**

Cattle may not be moved interstate except in compliance with this subpart and with 9 CFR part 86. Cattle moved interstate under permit in accordance with this subpart are not required to be accompanied by an interstate certificate of veterinary inspection or owner-shipper statement.

■ 29. Section 78.6 is revised to read as follows:

**§ 78.6   Steers and spayed heifers.**

Steers and spayed heifers may be moved interstate in accordance with 9 CFR part 86 and without further restriction under this subpart.

■ 30. Section 78.9 is amended as follows:
■ a. In the introductory text, by revising the first sentence to read as set forth below.
■ b. By revising paragraphs (a)(3)(ii), (a)(3)(iii), (b)(3)(i), (b)(3)(ii), (b)(3)(iv), (c)(1)(i), (c)(1)(ii), (c)(1)(iv)(A), (c)(1)(vi)(A), (c)(2)(ii)(A), (c)(3)(i), (c)(3)(ii), (c)(3)(iv), (d)(1)(i), (d)(1)(ii), (d)(1)(iv)(A), (d)(1)(vi)(A), (d)(2)(ii)(A), and (d)(3) to read as set forth below.

**§ 78.9   Cattle from herds not known to be affected.**

Male cattle which are not test eligible and are from herds not known to be affected may be moved interstate without further restriction under this subpart. \*  \*  \*

(a) \*  \*  \*

(3) \*  \*  \*

(ii) Such cattle are moved interstate as part of a commuter herd in accordance with a commuter herd agreement or other documents as agreed to by the shipping and receiving States or Tribes.

(iii) Such cattle are moved interstate accompanied by an ICVI which states, in addition to the items specified in § 78.1, that the cattle originated in a Class Free State or area.

(b) \*  \*  \*

(3) \*  \*  \*

(i) Such cattle originate in a certified brucellosis-free herd and are accompanied interstate by an ICVI which states, in addition to the items specified in § 78.1, that the cattle originated in a certified brucellosis-free herd; or

(ii) Such cattle are negative to an official test within 30 days prior to such interstate movement and are accompanied interstate by an ICVI which states, in addition to the items specified in § 78.1, the test dates and results of the official tests; or

\*    \*    \*    \*    \*

(iv) Such cattle are moved as part of a commuter herd in accordance with a commuter herd agreement or other documents as agreed to by the shipping and receiving States or Tribes..

(c) \*  \*  \*

(1) \*  \*  \* (i) Such cattle may be moved interstate from a farm of origin or a nonquarantined feedlot directly to a recognized slaughtering establishment without further restriction under this subpart.

(ii) Such cattle may be moved interstate from a farm of origin directly

AR-000525

to an approved intermediate handling facility without further restriction under this subpart.

\*    \*    \*    \*    \*

(iv) \* \* \*

(A) They are negative to an official test conducted at the specifically approved stockyard and are accompanied to slaughter by an ICVI or ''S'' brand permit which states, in addition to the items specified in § 78.1, the test dates and results of the official tests; or

\*    \*    \*    \*    \*

(vi) \* \* \*

(A) They are negative to an official test within 30 days prior to such interstate movement and are accompanied by an ICVI or ''S'' brand permit which states, in addition to the items specified in § 78.1, the test dates and results of the official tests; or

\*    \*    \*    \*    \*

(2) \* \* \*

(ii) \* \* \*

(A) They are negative to an official test within 30 days prior to such movement and are accompanied by an ICVI which states, in addition to the items specified in § 78.1, the test dates and results of the official tests; or

\*    \*    \*    \*    \*

(3) \* \* \*

(i) Such cattle originate in a certified brucellosis-free herd and are accompanied interstate by an ICVI which states, in addition to the items specified in § 78.1, that the cattle originated in a certified brucellosis-free herd; or

(ii) Such cattle are negative to an official test within 30 days prior to interstate movement, have been issued a permit for entry, and are accompanied interstate by an ICVI which states, in addition to the items specified in § 78.1, the test dates and results of the official tests; or

\*    \*    \*    \*    \*

(iv) Such cattle are moved interstate as part of a commuter herd in accordance with a commuter herd agreement or other documents as agreed to by the shipping and receiving States or Tribes, and

(A) The cattle being moved originate from a herd in which:

(1) All the cattle were negative to a herd blood test within 1 year prior to the interstate movement;

(2) Any cattle added to the herd after such herd blood test were negative to an official test within 30 days prior to the date the cattle were added to the herd;

(3) None of the cattle in the herd have come in contact with any other cattle; and (B) The cattle are accompanied interstate by a document which states

the dates and results of the herd blood test and the name of the laboratory in which the official tests were conducted

\*    \*    \*    \*    \*

(d) \* \* \*

(1) \* \* \* (i) Such cattle may be moved interstate from a farm of origin or a nonquarantined feedlot directly to a recognized slaughtering establishment without further restriction under this subpart.

(ii) Such cattle may be moved interstate from a farm of origin directly to an approved intermediate handling facility without further restriction under this subpart.

\*    \*    \*    \*    \*

(iv) \* \* \*

(A) They are negative to an official test conducted at the specifically approved stockyard and are accompanied by an ICVI or ''S'' brand permit which states, in addition to the items specified in § 78.1, the test dates and results of the official tests; or

\*    \*    \*    \*    \*

(vi) \* \* \*

(A) They are negative to an official test within 30 days prior to such interstate movement and are accompanied by an ICVI or ''S'' brand permit which states, in addition to the items specified in § 78.1, the test dates and results of the official tests; or

\*    \*    \*    \*    \*

(2) \* \* \*

(ii) \* \* \*

(A) They are negative to an official test within 30 days prior to such movement and are accompanied by an ICVI which states, in addition to the items specified in § 78.1, the test dates and results of the official tests; or

\*    \*    \*    \*    \*

(3) *Movement other than in accordance with paragraphs (d)(1) or (2) of this section.* Such cattle may be moved interstate other than in accordance with paragraphs (d)(1) or (2) of this section only if such cattle originate in a certified brucellosis-free herd and are accompanied interstate by an ICVI which states, in addition to the items specified in § 78.1, that the cattle originated in a certified brucellosis-free herd.

\*    \*    \*    \*    \*

**§ 78.12    [Amended]**

■ 31. Section 78.12 is amended as follows:

■ a. In the introductory text, by adding the words '', 9 CFR part 86,'' after the citation ''§ 78.10''.

■ b. In paragraph (a), by adding the word ''further'' after the word ''without''.

■ c. In paragraphs (d)(1)(i), (d)(2)(i), and (d)(3)(ii), by removing the words ''a certificate'' and adding the words ''an ICVI'' in their place each time they occur.

■ 32. Section 78.14 is revised to read as follows:

**§ 78.14    Rodeo cattle.**

(a) Rodeo cattle that are test-eligible and that are from a herd not known to be affected may be moved interstate if:

(1) They are classified as brucellosis negative based upon an official test conducted less than 365 days before the date of interstate movement: *Provided, however, That:* The official test is not required for rodeo cattle that are moved only between Class Free States;

(2) The cattle are identified with an official eartag or any other official identification device or method approved by the Administrator in accordance with § 78.5;

(3) There is no change of ownership since the date of the last official test;

(4) An ICVI accompanies each interstate movement of the cattle; and

(5) A permit for entry is issued for each interstate movement of the cattle.

(b) Cattle that would qualify as rodeo cattle, but that are used for breeding purposes during the 365 days following the date of being tested, may be moved interstate only if they meet the requirements for cattle in this subpart and in 9 CFR part 86.

(Approved by the Office of Management and Budget under control number 0579–0047)

**§ 78.20    [Amended]**

■ 33. Section 78.20 is amended by adding the words ''and with 9 CFR part 86'' after the word ''subpart''.

**§ 78.21    [Amended]**

■ 34. Section 78.21 is amended by adding the word ''further'' after the word ''without''.

■ 35. Section 78.23, paragraph (c) introductory text, is revised to read as follows:

**§ 78.23    Brucellosis exposed bison.**

\*    \*    \*    \*    \*

(c) *Movement other than in accordance with paragraphs (a) or (b) of this section.* Brucellosis exposed bison which are from herds known to be affected, but which are not part of a herd being depopulated under part 51 of this chapter, may move without further restriction under this subpart if the bison:

\*    \*    \*    \*    \*

**§ 78.24    [Amended]**

■ 36. Section 78.24 is amended as follows:

■ a. In paragraphs (a) and (b), by adding the word "further" after the word "without" each time it occurs.

■ b. In paragraphs (d)(1), (d)(2), (d)(3), and (d)(4), by removing the words "a certificate" and adding the words "an ICVI" in their place each time they occur.

■ 37. A new part 86 is added to subchapter C to read as follows:

## PART 86—ANIMAL DISEASE TRACEABILITY

Sec.
86.1   Definitions.
86.2   General requirements for traceability.
86.3   Recordkeeping requirements.
86.4   Official identification.
86.5   Documentation requirements for interstate movement of covered livestock.
86.6   [Reserved]
86.7   [Reserved]
86.8   Preemption.

**Authority:** 7 U.S.C. 8301–8317; 7 CFR 2.22, 2.80, and 371.4.

### § 86.1   Definitions.

*Animal identification number (AIN).* A numbering system for the official identification of individual animals in the United States that provides a nationally unique identification number for each animal. The AIN consists of 15 digits, with the first 3 being the country code (840 for the United States or a unique country code for any U.S. territory that has such a code and elects to use it in place of the 840 code). The alpha characters USA or the numeric code assigned to the manufacturer of the identification device by the International Committee on Animal Recording may be used as an alternative to the 840 or other prefix representing a U.S. territory; however, only the AIN beginning with the 840 or other prefix representing a U.S. territory will be recognized as official for use on AIN tags applied to animals on or after March 11, 2015. The AIN beginning with the 840 prefix may not be applied to animals known to have been born outside the United States.

*Approved livestock facility.* A stockyard, livestock market, buying station, concentration point, or any other premises under State or Federal veterinary inspection where livestock are assembled and that has been approved under § 71.20 of this chapter.

*Approved tagging site.* A premises, authorized by APHIS, State, or Tribal animal health officials, where livestock may be officially identified on behalf of their owner or the person in possession, care, or control of the animals when they are brought to the premises.

*Commuter herd.* A herd of cattle or bison moved interstate during the course of normal livestock management operations and without change of ownership directly between two premises, as provided in a commuter herd agreement.

*Commuter herd agreement.* A written agreement between the owner(s) of a herd of cattle or bison and the animal health officials for the States or Tribes of origin and destination specifying the conditions required for the interstate movement from one premises to another in the course of normal livestock management operations and specifying the time period, up to 1 year, that the agreement is effective. A commuter herd agreement may be renewed annually.

*Covered livestock.* Cattle and bison, horses and other equine species, poultry, sheep and goats, swine, and captive cervids.

*Dairy cattle.* All cattle, regardless of age or sex or current use, that are of a breed(s) used to produce milk or other dairy products for human consumption, including, but not limited to, Ayrshire, Brown Swiss, Holstein, Jersey, Guernsey, Milking Shorthorn, and Red and Whites.

*Directly.* Moved in a means of conveyance, without stopping to unload while en route, except for stops of less than 24 hours to feed, water, or rest the animals being moved, and with no commingling of animals at such stops.

*Flock-based number system.* The flock-based number system combines a flock identification number (FIN) with a producer's unique livestock production numbering system to provide a nationally unique identification number for an animal.

*Flock identification number (FIN).* A nationally unique number assigned by a State, Tribal, or Federal animal health authority to a group of animals that are managed as a unit on one or more premises and are under the same ownership.

*Group/lot identification number (GIN).* The identification number used to uniquely identify a "unit of animals" of the same species that is managed together as one group throughout the preharvest production chain. When a GIN is used, it is recorded on documents accompanying the animals moving interstate; it is not necessary to have the GIN attached to each animal.

*Interstate certificate of veterinary inspection (ICVI).* An official document issued by a Federal, State, Tribal, or accredited veterinarian certifying the inspection of animals in preparation for interstate movement.

(a) The ICVI must show the species of animals covered by the ICVI; the number of animals covered by the ICVI; the purpose for which the animals are to be moved; the address at which the animals were loaded for interstate movement; the address to which the animals are destined; and the names of the consignor and the consignee and their addresses if different from the address at which the animals were loaded or the address to which the animals are destined. Additionally, unless the species-specific requirements for ICVIs provide an exception, the ICVI must list the official identification number of each animal, except as provided in paragraph (b) of this definition, or group of animals moved that is required to be officially identified, or, if an alternative form of identification has been agreed upon by the sending and receiving States, the ICVI must include a record of that identification. If animals moving under a GIN also have individual official identification, only the GIN must be listed on the ICVI. An ICVI may not be issued for any animal that is not officially identified if official identification is required. If the animals are not required by the regulations to be officially identified, the ICVI must state the exemption that applies (e.g., the cattle and bison do not belong to one of the classes of cattle and bison to which the official identification requirements of this part apply). If the animals are required to be officially identified but the identification number does not have to be recorded on the ICVI, the ICVI must state that all animals to be moved under the ICVI are officially identified.

(b) As an alternative to typing or writing individual animal identification on an ICVI, if agreed to by the receiving State or Tribe, another document may be used to provide this information, but only under the following conditions:

(1) The document must be a State form or APHIS form that requires individual identification of animals or a printout of official identification numbers generated by computer or other means;

(2) A legible copy of the document must be stapled to the original and each copy of the ICVI;

(3) Each copy of the document must identify each animal to be moved with the ICVI, but any information pertaining to other animals, and any unused space on the document for recording animal identification, must be crossed out in ink; and

(4) The following information must be written in ink in the identification column on the original and each copy of the ICVI and must be circled or boxed, also in ink, so that no additional information can be added:

AR-000527

(i) The name of the document; and

(ii) Either the unique serial number on the document or, if the document is not imprinted with a serial number, both the name of the person who prepared the document and the date the document was signed.

*Interstate movement.* From one State into or through any other State.

*Livestock.* All farm-raised animals.

*Location-based numbering system.* The location-based number system combines a State or Tribal issued location identification (LID) number or a premises identification number (PIN) with a producer's unique livestock production numbering system to provide a nationally unique and herd-unique identification number for an animal.

*Location identification (LID) number.* A nationally unique number issued by a State, Tribal, and/or Federal animal health authority to a location as determined by the State or Tribe in which it is issued. The LID number may be used in conjunction with a producer's own unique livestock production numbering system to provide a nationally unique and herd-unique identification number for an animal. It may also be used as a component of a group/lot identification number (GIN).

*Move.* To carry, enter, import, mail, ship, or transport; to aid, abet, cause, or induce carrying, entering, importing, mailing, shipping, or transporting; to offer to carry, enter, import, mail, ship, or transport; to receive in order to carry, enter, import, mail, ship, or transport; or to allow any of these activities.

*National Uniform Eartagging System (NUES).* A numbering system for the official identification of individual animals in the United States that provides a nationally unique identification number for each animal.

*Official eartag.* An identification tag approved by APHIS that bears an official identification number for individual animals. Beginning March 11, 2014, all official eartags manufactured must bear an official eartag shield. Beginning March 11, 2015, all official eartags applied to animals must bear an official eartag shield. The design, size, shape, color, and other characteristics of the official eartag will depend on the needs of the users, subject to the approval of the Administrator. The official eartag must be tamper-resistant and have a high retention rate in the animal.

*Official eartag shield.* The shield-shaped graphic of the U.S. Route Shield with "U.S." or the State postal abbreviation or Tribal alpha code imprinted within the shield.

*Official identification device or method.* A means approved by the Administrator of applying an official identification number to an animal of a specific species or associating an official identification number with an animal or group of animals of a specific species or otherwise officially identifying an animal or group of animals.

*Official identification number.* A nationally unique number that is permanently associated with an animal or group of animals and that adheres to one of the following systems:

(1) National Uniform Eartagging System (NUES).

(2) Animal identification number (AIN).

(3) Location-based number system.

(4) Flock-based number system.

(5) Any other numbering system approved by the Administrator for the official identification of animals.

*Officially identified.* Identified by means of an official identification device or method approved by the Administrator.

*Owner-shipper statement.* A statement signed by the owner or shipper of the livestock being moved stating the location from which the animals are moved interstate; the destination of the animals; the number of animals covered by the statement; the species of animal covered; the name and address of the owner at the time of the movement; the name and address of the shipper; and the identification of each animal, as required by the regulations, unless the regulations specifically provide that the identification does not have to be recorded.

*Person.* Any individual, corporation, company, association, firm, partnership, society, or joint stock company, or other legal entity.

*Premises identification number (PIN).* A nationally unique number assigned by a State, Tribal, and/or Federal animal health authority to a premises that is, in the judgment of the State, Tribal, and/or Federal animal health authority a geographically distinct location from other premises. The PIN may be used in conjunction with a producer's own livestock production numbering system to provide a nationally unique and herd-unique identification number for an animal. It may be used as a component of a group/lot identification number (GIN).

*Recognized slaughtering establishment.* Any slaughtering facility operating under the Federal Meat Inspection Act (21 U.S.C. 601 *et seq.*), the Poultry Products Inspection Act (21 U.S.C. 451 *et seq.*), or State meat or poultry inspection acts that is

approved in accordance with 9 CFR 71.21.

*United States Department of Agriculture (USDA) approved backtag.* A backtag issued by APHIS that provides a temporary unique identification for each animal.

### § 86.2 General requirements for traceability.

(a) The regulations in this part apply only to covered livestock, as defined in § 86.1.

(b) No person may move covered livestock interstate or receive such livestock moved interstate unless the livestock meet all applicable requirements of this part.

(c) The regulations in this part will apply to the movement of covered livestock onto and from Tribal lands only when the movement is an interstate movement; i.e., when the movement is across a State line.

(d) In addition to meeting all applicable requirements of this part, all covered livestock moved interstate must be moved in compliance with all applicable provisions of APHIS program disease regulations (subchapter C of this chapter).

(e) The interstate movement requirements in this part do not apply to the movement of covered livestock if:

(1) The movement occurs entirely within Tribal land that straddles a State line and the Tribe has a separate traceability system from the States in which its lands are located; or

(2) The movement is to a custom slaughter facility in accordance with Federal and State regulations for preparation of meat.

### § 86.3 Recordkeeping requirements.

(a) *Official identification device distribution records.* Any State, Tribe, accredited veterinarian, or other person or entity who distributes official identification devices must maintain for 5 years a record of the names and addresses of anyone to whom the devices were distributed.

(b) *Interstate movement records.* Approved livestock facilities must keep any ICVIs or alternate documentation that is required by this part for the interstate movement of covered livestock that enter the facility on or after March 11, 2013. For poultry and swine, such documents must be kept for at least 2 years, and for cattle and bison, sheep and goats, cervids, and equines, 5 years.

### § 86.4 Official identification.

(a) *Official identification devices and methods.* The Administrator has approved the following official

AR-000528

identification devices or methods for the species listed. The Administrator may authorize the use of additional devices or methods for a specific species if he or she determines that such additional devices or methods will provide for adequate traceability.

(1) *Cattle and bison.* Cattle and bison that are required to be officially identified for interstate movement under this part must be identified by means of:

(i) An official eartag; or

(ii) Brands registered with a recognized brand inspection authority and accompanied by an official brand inspection certificate, when agreed to by the shipping and receiving State or Tribal animal health authorities; or

(iii) Tattoos and other identification methods acceptable to a breed association for registration purposes, accompanied by a breed registration certificate, when agreed to by the shipping and receiving State or/Tribal animal health authorities; or

(iv) Group/lot identification when a group/lot identification number (GIN) may be used.

(2) *Horses and other equine species.* Horses and other equine species that are required to be officially identified for interstate movement under this part must be identified by one of the following methods:

(i) A description sufficient to identify the individual equine including, but not limited to, name, age, breed, color, gender, distinctive markings, and unique and permanent forms of identification when present (e.g., brands, tattoos, scars, cowlicks, blemishes or biometric measurements). When the identity of the equine is in question at the receiving destination, the State or Tribal animal health official in the State or Tribe of destination or APHIS representative may determine if the description provided is sufficient; or

(ii) Electronic identification that complies with ISO 11784/11785; or

(iii) Non-ISO electronic identification injected to the equine on or before March 11, 2014; or

(iv) Digital photographs sufficient to identify the individual equine; or

(v) For equines being commercially transported to slaughter, a device or method authorized by 88 of this chapter.

(3) *Poultry.* Poultry that are required to be officially identified for interstate movement under this part must be identified by one of the following methods:

(i) Sealed and numbered leg bands in the manner referenced in the National Poultry Improvement Plan regulations (parts 145 through 147 of this chapter); or

(ii) Group/lot identification when a group/lot identification number (GIN) may be used.

(4) *Sheep and goats.* Sheep and goats that are required to be officially identified for interstate movement under this part must be identified by a device or method authorized by part 79 of this chapter.

(5) *Swine.* Swine that are required to be officially identified for interstate movement under this part must be identified by a device or method authorized by § 71.19 of this chapter.

(6) *Captive cervids.* Captive cervids that are required to be officially identified for interstate movement under this part must be identified by a device or method authorized by part 77 of this chapter.

(b) *Official identification requirements for interstate movement*— (1) *Cattle and bison.* (i) All cattle and bison listed in paragraphs (b)(1)(iii)(A) through (b)(1)(iii)(D) of this section must be officially identified prior to the interstate movement, using an official identification device or method listed in paragraph (a)(1) of this section unless:

(A) The cattle and bison are moved as a commuter herd with a copy of the commuter herd agreement or other documents as agreed to by the shipping and receiving States or Tribes. If any of the cattle or bison are shipped to a State or Tribe not included in the commuter herd agreement or other documentation, then these cattle or bison must be officially identified and documented to the original State of origin.

(B) The cattle and bison are moved directly from a location in one State through another State to a second location in the original State.

(C) The cattle and bison are moved interstate directly to an approved tagging site and are officially identified before commingling with cattle and bison from other premises or identified by the use of backtags or other methods that will ensure that the identity of the animal is accurately maintained until tagging so that the official eartag can be correlated to the person responsible for shipping the animal to the approved tagging site.

(D) The cattle and bison are moved between shipping and receiving States or Tribes with another form of identification, as agreed upon by animal health officials in the shipping and receiving States or Tribes.

(ii) Cattle and bison may also be moved interstate without official identification if they are moved directly to a recognized slaughtering establishment or directly to no more than one approved livestock facility and then directly to a recognized

slaughtering establishment, where they are harvested within 3 days of arrival; and

(A) They are moved interstate with a USDA-approved backtag; or

(B) A USDA-approved backtag is applied to the cattle or bison at the recognized slaughtering establishment or federally approved livestock facility.

(C) If a determination to hold the cattle or bison for more than 3 days is made after the animals arrive at the slaughter establishment, the animals must be officially identified in accordance with § 86.4(d)(4)(ii).

(iii) Beginning on March 11, 2013, all cattle and bison listed below are subject to the official identification requirements of this section:

(A) All sexually intact cattle and bison 18 months of age or over;

(B) All female dairy cattle of any age and all dairy males born after March 11, 2013;

(C) Cattle and bison of any age used for rodeo or recreational events; and

(D) Cattle and bison of any age used for shows or exhibitions.

(2) *Sheep and goats.* Sheep and goats moved interstate must be officially identified prior to the interstate movement unless they are exempt from official identification requirements under 9 CFR part 79 or are officially identified after the interstate movement, as provided in 9 CFR part 79.

(3) *Swine.* Swine moving interstate must be officially identified in accordance with § 71.19 of this chapter.

(4) *Horses and other equines.* Horses and other equines moving interstate moved interstate must be officially identified prior to the interstate movement, using an official identification device or method listed in paragraph (a)(2) of this section unless:

(i) They are used as the mode of transportation (horseback, horse and buggy) for travel to another location and then return direct to the original location.

(ii) They are moved from the farm or stable for veterinary medical examination or treatment and returned to the same location without change in ownership.

(iii) They are moved directly from a location in one State through another State to a second location in the original State.

(iv) They are moved between shipping and receiving States or Tribes with another form of identification as agreed upon by animal health officials in the shipping and receiving States or Tribes.

(5) *Poultry.* Poultry moving interstate must be officially identified prior to interstate movement unless:

(i) The shipment of poultry is from a hatchery to a redistributor or poultry

AR-000529

grower and the person responsible for receiving the shipment maintains a record of the supplier; or

(ii) The shipment is from a redistributor to a poultry grower and the person responsible for receiving the chicks maintains a record of the supplier of the chicks; or

(iii) The poultry are identified as agreed upon by the States or Tribes involved in the movement.

(6) *Captive cervids.* Captive cervids moving interstate must be officially identified prior to interstate movement in accordance with part 77 of this chapter.

(c) *Use of more than one official eartag.* Beginning on March 13, 2013, no more than one official eartag may be applied to an animal, except that:

(1) Another official eartag may be applied providing it bears the same official identification number as an existing one.

(2) In specific cases when the need to maintain the identity of an animal is intensified (e.g., such as for export shipments, quarantine herds, field trials, experiments, or disease surveys), a State or Tribal animal health official or an area veterinarian in charge may approve the application of an additional official eartag to an animal that already has one or more. The person applying the additional official eartag must record the following information about the event and maintain the record for 5 years: The date the additional official eartag is added; the reason for the additional official eartag device; and the official identification numbers of both the new official eartag and the one(s) already attached to the animal.

(3) An eartag with an animal identification number (AIN) beginning with the 840 prefix (either radio frequency identification or visual-only tag) may be applied to an animal that is already officially identified with one or more National Uniform Eartagging System tags and/or an official vaccination eartag used for brucellosis. The person applying the AIN eartag must record the date the AIN tag is added and the official identification numbers of both official eartags and must maintain those records for 5 years.

(4) A brucellosis vaccination eartag with a National Uniform Eartagging System number may be applied in accordance with part 78 of this chapter to an animal that is already officially identified with one or more official eartags under this part. The person applying the vaccination eartag must record the date the tag is added and the official identification numbers of both the existing official eartag(s) and the vaccination eartag and must maintain those records for 5 years.

(d) *Removal or loss of official identification devices.* (1) Official identification devices are intended to provide permanent identification of livestock and to ensure the ability to find the source of animal disease outbreaks. Removal of these devices, including devices applied to imported animals in their countries of origin and recognized by the Administrator as official, is prohibited except at the time of slaughter, at any other location upon the death of the animal, or as otherwise approved by the State or Tribal animal health official or an area veterinarian in charge when a device needs to be replaced.

(2) All man-made identification devices affixed to covered livestock unloaded at slaughter plants after moving interstate must be removed at the slaughter facility by slaughter-facility personnel with the devices correlated with the animal and its carcass through final inspection or condemnation by means approved by the Food Safety Inspection Service (FSIS). If diagnostic samples are taken, the identification devices must be packaged with the samples and be correlated with the carcasses through final inspection or condemnation by means approved by FSIS. Devices collected at slaughter must be made available to APHIS and FSIS by the slaughter plant.

(3) All official identification devices affixed to covered livestock carcasses moved interstate for rendering must be removed at the rendering facility and made available to APHIS.

(4) If an animal loses an official identification device and needs a new one: (i) A replacement tag with a different official identification number may be applied. The person applying a new official identification device with a different official identification number must record the following information about the event and maintain the record for 5 years: The date the new official identification device was added; the official identification number on the device; and the official identification number on the old device if known.

(ii) Replacement of a temporary identification device with a new official identification device is considered to be a retagging event, and all applicable information must be maintained in accordance with paragraph (d)(4)(i) of this section.

(iii) A duplicate replacement eartag with the official number of the lost tag may be applied in accordance with APHIS' protocol for the administration of such tags.

(e) *Replacement of official identification devices for reasons other than loss.*

(1) Circumstances under which a State or Tribal animal health official or an area veterinarian in charge may authorize replacement of an official identification device include, but are not limited to:

(i) Deterioration of the device such that loss of the device appears likely or the number can no longer be read;

(ii) Infection at the site where the device is attached, necessitating application of a device at another location (e.g., a slightly different location of an eartag in the ear);

(iii) Malfunction of the electronic component of a radio frequency identification (RFID) device; or

(iv) Incompatibility or inoperability of the electronic component of an RFID device with the management system or unacceptable functionality of the management system due to use of an RFID device.

(2) Any time an official identification device is replaced, as authorized by the State or Tribal animal health official or area veterinarian in charge, the person replacing the device must record the following information about the event and maintain the record for 5 years:

(i) The date on which the device was removed;

(ii) Contact information for the location where the device was removed;

(iii) The official identification number (to the extent possible) on the device removed;

(iv) The type of device removed (e.g., metal eartag, RFID eartag);

(v) The reason for the removal of the device;

(vi) The new official identification number on the replacement device; and

(vii) The type of replacement device applied.

(f) *Sale or transfer of official identification devices.* Official identification devices are not to be sold or otherwise transferred from the premises to which they were originally issued to another premises without authorization by the Administrator or a State or Tribal animal health official.

**§ 86.5  Documentation requirements for interstate movement of covered livestock.**

(a) The persons responsible for animals leaving a premises for interstate movement must ensure that the animals are accompanied by an interstate certificate of veterinary inspection (ICVI) or other document required by this part for the interstate movement of animals.

(b)(1) The APHIS representative, State or Tribal representative, or accredited

AR-000530

**Federal Register**/Vol. 78, No. 6/Wednesday, January 9, 2013/Rules and Regulations    **2075**

veterinarian issuing an ICVI or other document required for the interstate movement of animals under this part must forward a copy of the ICVI or other document to the State or Tribal animal health official of the State or Tribe of origin within 7 calendar days from the date on which the ICVI or other document is issued. The State or Tribal animal health official in the State or Tribe of origin must forward a copy of the ICVI or other document to the State or Tribal animal health official the State or Tribe of destination within 7 calendar days from date on which the ICVI or other document is received.

(2) The animal health official or accredited veterinarian issuing or receiving an ICVI or other interstate movement document in accordance with paragraph (b)(1) of this section must keep a copy of the ICVI or alternate documentation. For poultry and swine, such documents must be kept for at least 2 years, and for cattle and bison, sheep and goats, cervids, and equines, 5 years.

(c) *Cattle and bison.* Cattle and bison moved interstate must be accompanied by an ICVI unless:

(1) They are moved directly to a recognized slaughtering establishment, or directly to an approved livestock facility and then directly to a recognized slaughtering establishment, and they are accompanied by an owner-shipper statement.

(2) They are moved directly to an approved livestock facility with an owner-shipper statement and do not move interstate from the facility unless accompanied by an ICVI.

(3) They are moved from the farm of origin for veterinary medical examination or treatment and returned to the farm of origin without change in ownership.

(4) They are moved directly from one State through another State and back to the original State.

(5) They are moved as a commuter herd with a copy of the commuter herd agreement or other document as agreed to by the States or Tribes involved in the movement.

(6) Additionally, cattle and bison may be moved between shipping and receiving States or Tribes with documentation other than an ICVI, e.g., a brand inspection certificate, as agreed upon by animal health officials in the shipping and receiving States or Tribes.

(7) The official identification number of cattle or bison must be recorded on the ICVI or alternate documentation unless:

(i) The cattle or bison are moved from an approved livestock facility directly to a recognized slaughtering establishment; or

(ii) The cattle and bison are sexually intact cattle or bison under 18 months of age or steers or spayed heifers; *Except that:* This exception does not apply to sexually intact dairy cattle of any age or to cattle or bison used for rodeo, exhibition, or recreational purposes.

(d) *Sheep and goats.* Sheep and goats moved interstate must be accompanied by documentation as required by part 79 of this chapter.

(e) *Swine.* Swine moved interstate must be accompanied by documentation in accordance with § 71.19 of this chapter or, if applicable, with part 85.

(f) *Horses and other equines.* Horses and other equines moved interstate must be accompanied by an ICVI unless:

(1) They are used as the mode of transportation (horseback, horse and buggy) for travel to another location and then return direct to the original location.

(2) They are moved from the farm or stable for veterinary medical examination or treatment and returned to the same location without change in ownership.

(3) They are moved directly from a location in one State through another State to a second location in the original State.

(4) Additionally, equines may be moved between shipping and receiving States or Tribes with documentation other than an ICVI, e.g., an equine infectious anemia test chart, as agreed to by the shipping and receiving States or Tribes involved in the movement.

(5) Equines moving commercially to slaughter must be accompanied by documentation in accordance with part 88 of this chapter. Equine infectious anemia reactors moving interstate must be accompanied by documentation as required by part 75 of this chapter.

(g) *Poultry.* Poultry moved interstate must be accompanied by an ICVI unless:

(1) They are from a flock participating in the National Poultry Improvement Plan (NPIP) and are accompanied by the documentation required under the NPIP regulations (parts 145 through 147 of this chapter) for participation in that program; or

(2) They are moved directly to a recognized slaughtering or rendering establishment; or

(3) They are moved from the farm of origin for veterinary medical examination, treatment, or diagnostic purposes and either returned to the farm of origin without change in ownership or euthanized and disposed of at the veterinary facility; or

(4) They are moved directly from one State through another State and back to the original State; or

(5) They are moved between shipping and receiving States or Tribes with a VS Form 9–3 or documentation other than an ICVI, as agreed upon by animal health officials in the shipping and receiving States or Tribes.

(6) They are moved under permit in accordance with part 82 of this chapter.

(h) *Captive cervids.* Captive cervids moved interstate must be accompanied by documentation as required by part 77 of this chapter.

**§ 86.6    [Reserved]**

**§ 86.7    [Reserved]**

**§ 86.8    Preemption.**

State, Tribal, and local laws and regulations may not specify an official identification device or method that would have to be used if multiple devices or methods may be used under this part for a particular species, nor may the State or Tribe of destination impose requirements that would otherwise cause the State or Tribe from which the shipments originate to have to develop a particular kind of traceability system or change its existing system in order to meet the requirements of the State or Tribe of destination.

Done in Washington, DC, this 19th day of December 2012.

**Edward Avalos,**

*Under Secretary for Marketing and Regulatory Programs.*

[FR Doc. 2012–31114 Filed 1–8–13; 8:45 am]

**BILLING CODE** 3410–34–P

AR-000531